## Case No. 5,964.

HALSEY et al. v. FAIRBANKS et al.

[4 Mason, 206.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1826.

ASSIGNMENT FOR BENEFIT OF CREDITORS—EFFECT OF IMPERFECTIONS IN—RELEASE FOR FIRM.

1. On the general validity of assignments, made by a failing debtor for the benefit of creditors.

---

[1] [Reported by William P. Mason, Esq.]

2. An assignment for the benefit of all creditors is good against subsequent attachments, although all the creditors are not parties to the deed before the attachments.

[Cited in Stewart v. Spenser, Case No. 13,437.]

[Cited in Ingram v. Kirkpatrick, 6 Ired. Eq. 463; Hall v. Denison, 17 Vt. 317.]

3. It is not a fraud upon any attaching creditor to provide for the payment of all the creditors, in preference to one, who means to attach by process the property conveyed.

[Cited in U. S. v. New Bedford Bridge, Case No. 15,867; Adams v. Blodgett, Id. 46.]

[Cited in Walters v. Whitlock, 9 Fla. 86; Mathews v. Stewart, 44 Mich. 216, 6 N. W. 635.]

4. A general assignment is good, notwithstanding it does not purport to convey all the debtor's property, and yet requires a general release; or has imperfect schedules annexed to it; or does not fully enumerate all the debts due, or describes the property generally; or gives preference to certain classes of creditors; or authorizes debts to be admitted by the assent of the debtor, the trustee, and any one creditor; or authorizes the trustee to require an oath from a creditor of the truth of his debt; or provides for a future mode of ascertaining privileged debts; or reserves any ultimate surplus after payment of all debts to the debtor; or allows six months for the creditors to come in under it; or requires a general release from all creditors who come in and assent to the assignment.

[Cited in Adams v. Blodgett, Case No. 46.]

[Cited in Rundlett v. Dole, 10 N. H. 462; McFarland v. Birdsall, 14 Ind. 129; Haven v. Richardson, 5 N. H. 124, 125, 127.]

5. If the terms of release are general, the operation will be restrained to a release of debts.

6. If the terms of a covenant by creditors to indemnify the debtor against claims under them are general, it will be construed a several covenant by each creditor, and not a joint one by all.

7. A general assignment is valid for future liabilities, as well as for debts due, if the parties so intend.

8. One partner may sign and seal such an assignment for the firm, and it will bind the partnership, as a release of the debt.

[Cited in McDonald v. Eggleston, 26 Vt. 157.]

9. Quaere, whether upon general principles, an assignment stipulating for a release of the debtor, ought not to be deemed fraudulent, as locking up the debtor's property from his creditors, unless they consent to relinquish a part of their debts?

[Cited in The Watchman, Case No. 17,251; Adams v. Blodgett, Id. 46; Stewart v. Spenser, Id. 13,437.]

[Cited in Atkinson v. Jordan, 5 Ohio, 300; Grover v. Wakeman, 11 Wend. 200, 217; Miller v. Conklin, 17 Ga. 430; Clayton v. Johnson, 36 Ark. 406; Greeley v. Dixon, 21 Fla. 413; Collier v. Davis, 47 Ark. 367, 1 S. W. 684; Schuler v. Miller, 45 Ohio St. 332, 13 N. E. 278; Garver v. Tisinger, 46 Ohio St. 61, 18 N. E. 493; Haven v. Richardson, 5 N. H. 124, 125, 127.]

10. The assent of creditors to an assignment, not stipulating for a release, may be presumed; aliter if release stipulated for.

[Cited in Stewart v. Spenser, Case No. 13,437.]

[Cited in Hurd v. Silsby, 10 N. H. 210; Oakley v. Hibbard, 1 Pin. 681; Merrills v. Swift, 18 Conn. 262; Spinney v. Portsmouth Hosiery Co., 25 N. H. 15, 16, 18; Sandmeyer v. Dakota F. & M. Ins. Co., 2 S. D. 352, 50 N. W. 354; Alliance Milling Co. v. Eaton (Tex. Sup.) 25 S. W. 615; Hall

v. Denison, 17 Vt. 313, 318; Greene v. Sprague Manuf'g Co., 52 Conn. 394.]

This was an action of assumpsit [by John C. Halsey and others] on several promissory notes, signed by the principal defendant. In June, 1826, Fairbanks, being unable to meet the demands against him, made an assignment of all his property to Whitney, in trust, for certain of his creditors, who should become parties to the assignment, and upon the consideration that they should release all their respective claims and demands upon him. The trusts, expressed in the instrument of assignment, were, that Whitney should sell the property, and, after paying all expenses, &c. then "apply the residue of said trust-moneys to the payment and discharge of the several promissory notes, bills of exchange, bonds, and other debts and sums of money, set forth in said schedule, marked A, belonging and owing to persons and parties hereto, and to indemnifying and saving them harmless from all losses, costs, and charges, which they, their heirs, executors, or administrators, may sustain or be put to, by reason of their having signed or indorsed said notes or bills of exchange, or otherwise become responsible for the payment of the same or any part thereof. Then in trust to apply the residue of said trust-moneys, to the payment and discharge of the several promissory notes, bills of exchange, and other debts and sums of money, set forth in said schedule, marked B, belonging and owing to persons, parties hereto in proportion to their respective amounts, and to indemnifying and saving harmless them, the said persons, their heirs, executors, and administrators, from all losses, payments, costs, and charges, which they shall sustain or be put to, by reason of having signed or indorsed said notes or bills, or any of them, or otherwise become responsible for payment of the same, or any part thereof, in proportion to their respective amounts of such losses, payments, costs, and charges, as far as said trust-monies will go; then in trust to pay over the surplus of said trust-monies, if any, unto the said Gerry Fairbanks, his executors or administrators, or his or their order in writing." The following provisions and clauses were also contained in the assignment: "And whereas it is the wish of the said Gerry Fairbanks, that all his creditors may have an equal opportunity to become parties hereto, it is mutually agreed, that the term of six months shall be allowed for all persons, creditors of the said Gerry Fairbanks, to become parties to these presents, upon the express condition, however, that all persons, whose claims are not mentioned in said schedules at the date of these presents, shall make oath, before a suitable magistrate, of the truth and justice of said claims, if thereto required by said trustee." "And it is further agreed, that such alterations and additions may be made in and to said schedules by the mutual consent of one

of the parties to each part of these presents as shall be necessary for a more perfect and correct statement of the matters and things therein contained." It was further provided by the said assignment, that the trustee, if he saw fit, might employ said Fairbanks, the debtor, to sell the goods so assigned. And it appeared by the answers of the trustee, that he was so employed, and a compensation allowed him therefor out of the proceeds. It also appeared by the answer of the trustee, that certain words and numbers were omitted by mistake in one of the three parts of the indenture of assignment, and that certain additions were made to one of the schedules before mentioned, after the creditors had signed the instrument of assignment. And that such additions were not made in the presence of one of the parties to each part of the indenture, but that such additions were made in good faith, and in pursuance of the undertaking and agreement contained in the assignment, and that a paper containing all the particulars, stated in said schedule so amended, was exhibited, with the indenture, to all the creditors who executed the same, and was laid before them when they executed it; and was exhibited, at a meeting of said creditors, as a component part of said instrument. It further appeared from the answers of the trustees, that the account of stock, annexed to the indentures, was made out after the execution and delivery of the indentures, but was exhibited to the creditors, who applied, or were called upon, to examine the said indentures, and was laid before them at their meeting.

Webster & Morse, for plaintiffs, contended, that, upon the facts which appeared in this case, the assignment was fraudulent in law, and insufficient to protect the property of the defendant in the hands of the trustee, from the claims of the plaintiffs. The principal points taken by them in support of their positions are severally noticed and commented upon in the opinion of the court.

C. G. Loring, contra.

STORY, Circuit Justice. The whole question, as to the plaintiffs' right of recovery in this case, turns upon the validity of the general assignment, made by the defendant, Gerry Fairbanks, an insolvent debtor, to William Whitney, the trustee, as set forth in the answers of the latter, for the benefit of creditors. If that assignment be fraudulent in point of law, as to creditors, then the right of the plaintiffs against the trustee is complete; if otherwise, then the trustee must be discharged. I own that there are some questions involved in this case, upon which I have long formed a decisive opinion, and which, after years of deliberate consideration, I find myself, upon any legal principles which have occurred to my mind, unable to surrender. If the conclusions, to which I

have arrived on this subject, differ from those which have been entertained by some eminent and learned minds, it cannot but create a just distrust of my own judgment. Still I am bound to follow the results of that judgment, and to administer the law as I understand it.

In one sense, the present discussion may be said to depend upon local law; in another, to depend upon general principles and presumptions belonging to the common law, in its widest application. So far as there may be any peculiarity in the jurisprudence and laws of Massachusetts, which limits the effect, or destroys the validity of general assignments, the question is local. So far as it involves principles and presumptions of constructive fraud upon creditors, the question must turn upon the same considerations substantially, as would govern it in New York, Pennsylvania, or England. It has been often argued, that general assignments for the benefit of creditors are void, because they operate as a fraud upon our attachment law. I can very well understand, why such an assignment of a debtor's property is deemed in England a fraud upon the bankrupt laws, because it is deemed per se an act of bankruptcy, and an attempt to distribute the debtor's property among his creditors in a mode discountenanced by the policy of those laws. But in respect to persons not falling within the reach of the bankrupt laws, such assignments, if bona fide made, and free of fraud, are so far from being prohibited, that they are, if I may so say, encouraged by the common law. Such an assignment, said Lord Ellenborough, in Pickstock v. Lyster, 3 Maule & S. 371, "is to be referred to an act of duty rather than of fraud, when no purpose of fraud is proved. The act arises out of a discharge of the moral duties attached to his character of debtor, to make the fund available for the whole body of creditors." And Mr. Justice Le Blanc added, in the same case (which was a general assignment for the benefit of all creditors), to hold such a deed fraudulent would be contrary, not only to Holbird v. Anderson, 5 Term R. 235, but to all the cases, which have decided, that a party, independently of the bankrupt statutes, may convey away his property for the benefit of all his creditors. Mr. Justice Bailey gave his full assent to the doctrine, emphatically observing, "that this conveyance, so far from being fraudulent, was the most honest act the party could do." This doctrine was asserted in a case where the very object of the conveyance was to prevent a judgment creditor from obtaining satisfaction out of the property on execution. But the court decided, that it was not sufficient, that the creditor was defeated and delayed by such a conveyance of his remedy under the execution; but the act must be fraudulent. Nor was there anything new in this doctrine. It may be clearly gathered from prior cases, and particularly from Estwick v. Caillaud, 5

Term R. 420; Holbird v. Anderson, Id. 235; Meux v. Howell, 4 East, 1; and it has since been confirmed, even as against the crown, in King v. Watson, 3 Price, 6. See, also, Nunn v. Wilsmore, 8 Term R. 528. It would indeed be somewhat strange, if a debtor might bonâ fide prefer one creditor to another in the distribution of his property, and was not at liberty to prefer all his creditors to one; to do equal justice to all, instead of exclusive justice to a preferred creditor. In the jurisprudence of Massachusetts, there is nothing analogous to a bankrupt or insolvent law inter vivos; and the general principles, as to frauds and fraudulent conveyances at common law, or under the statute of Elizabeth, are not supposed to be essentially different.

Then as to the position, that general assignments are a fraud upon our attachment law. For myself I have never been able to understand, precisely, what was intended by this language. Our attachment law is nothing more than a common process, by which any single creditor may attach the property of his debtor at the institution of his suit, so as to secure a priority of right to take the same by a levy and satisfaction on the execution, which may issue upon the judgment in such suit, for his own use. The attachment is not made for the benefit of creditors generally, but solely for the benefit of the attaching creditor. The creditor can attach only such property as he may take in execution; and there is not, and with deference be it said, there cannot be any fraud committed upon such creditor by any conveyance, which would not be equally a fraud upon a judgment creditor, who had made no prior attachment. The case, therefore, stands upon the same general principles, as that of a judgment creditor in England, so far as the conveyance may be decreed a fraudulent act to delay or defeat creditors, or in fraud of their legal means and process to satisfy their debts. Now the difficulty of the argument lies here. The property cannot be attached or taken in execution, unless it, at the time, belongs to the debtor. If he has lawfully parted with it bonâ fide, and for a valuable consideration, it no longer remains subject to process against him. A creditor may be defeated or delayed in the satisfaction of his debts by a bonâ fide conveyance of a debtor's property, either on a sale, or by a preference to another creditor. Such a conveyance is not rendered void by such effect, whether it be intentional or not. But there must be other ingredients in the case. There must be a fraudulent intent to defeat or delay creditors. Every conveyance, by which an insolvent debtor conveys his whole property to a few preferred creditors, not being more than sufficient to pay their debts, and they being parties to the deed, necessarily tends to delay and defeat all other creditors; but however strong the intention is, thereby to defeat or delay the latter, still it has never been supposed, that the conveyance was void on

that account. The law allows such preference to any one creditor; and I am unable to perceive why it does not equally allow a like preference of the whole creditors to one. It is assuming the whole question in controversy to say, that a general assignment is a fraud upon the attachment law, and therefore void. If fraud, it is doubtless void; and it would equally be so, as to a judgment or execution creditor, for the same reason. But whether a fraud or not, is the point to be proved. If by the principles of law, it is not dishonest to convey all a debtor's property for the benefit of all his creditors, if it be a moral and just discharge of duty, then it is no answer to say, that one creditor may be defeated of process to levy his whole debt; for it may be as forcibly replied, that, by the opposite course, all other creditors would lose theirs. The law allows the debtor to give a preference to one creditor (and, as I think, to all creditors also), by a bonâ fide conveyance. It allows any creditor also, by an attachment, to acquire a preference in invitum. But which shall prevail, depends entirely upon the priority of the acts, by which the preference is legally acquired. Neither is, of itself, a fraud upon the other. This is the English doctrine, and I am not prepared to admit, that it ought not to be held as true doctrine in Massachusetts as in Westminster hall, the common law being our birthright, and nothing in our positive code having changed, in this respect, its obligation or justice. It is in the fullest manner recognised and approved by the supreme court in Marbury v. Brooks, 7 Wheat. [20 U. S.] 556, 11 Wheat. [24 U. S.] 78. Taking the fair result of the Massachusetts decisions, they do not appear to me to overthrow, in an unqualified manner, the English doctrine. On the contrary, to a limited extent they support it; for every case, in which a general assignment in favor of creditors has been upheld, although every creditor was not a party, is an authority to show, that such an assignment is not fraudulent and void, ipso facto, as contravening the policy of our attachment law. If it were bad for such a cause, it could not be good for any purpose, for no consideration, however valuable, will uphold against a creditor a conveyance, which is a fraud upon the law. See Cadogan v. Kennett, Cowp. 432. The case of Hatch v. Smith, 5 Mass. 42, is directly in point, and has never been overturned.

Then again as to the position, that a general assignment for the benefit of creditors is void, unless the creditors are parties to, or assent to the conveyance. I say, are parties or assent, for I do not understand, that any local decisions have gone the length of requiring, that the creditors should be technically parties to the deed, or should assent to it at the moment of its execution. If they sign the instrument afterwards, or in any manner assent to and ratify its provisions, the conveyance is good against all persons but in-

tervening attaching creditors. One reason assigned for this position is, that otherwise there is no valuable consideration to uphold it. If this doctrine were to be tried by the established principles of the common law, it would encounter no small share of difficulty. To the creation of a trust by deed in favour of any persons, it is not necessary that the cestui que trust should either be a party or assent to it. He may indeed reject the beneficiary interest, and if he does so, it falls to the ground, and becomes, perhaps, a resulting trust for the grantor. But if the trust be for his benefit, the law presumes his assent to it, until the contrary is shown. And it is clear, that trusts may lawfully be created, where there can be no present assent, for they may be in favour of persons not in existence. It is sufficient, in general, that in such cases there is a competent grantor to convey, and a competent grantee to take the property. As to trusts, created for the benefit of creditors, and to which they are not, technically speaking, parties, if bonâ fide made, they are unquestionably valid by the law of England, and pass a legal estate to the trustee. The sole question that can arise, independent of the bankrupt laws, is, whether the conveyance is bonâ fide or fraudulent. It can be no question, whether it is for a valuable consideration or not, because the debts due to the creditors constitute a valuable consideration, in the highest sense of the terms, and the obligation of the trustee to perform the trust according to the provisions of the deed, is a sufficient valuable consideration, so far as he is concerned. Wilt v. Franklin, 1 Bin. 502, 517. This view of the law was adopted by the supreme court in Marbury v. Brooks, 7 Wheat. [20 U. S.] 556, 11 Wheat. [24 U. S.] 78, in a suit upon a foreign attachment. Now in the case of an assignment to a trustee for the benefit of all the creditors, where no release or other condition is stipulated for on behalf of the debtor, but the property is to be distributed equally among all the creditors pro rata, it seems to me, that his assent must be presumed upon the general principles of law, for the trust cannot be for his injury, and must be for his benefit. It must always be for his benefit to receive as much of his debt as the debtor can pay. If then, in such a case, such an assent be necessary, it may be inferred, as a presumption of law, until the contrary is shown; and if an assent is expressly given within a reasonable time, it operates retroactively to confirm the conveyance ab initio. Thompson v. Leach, 2 Vent. 198, 1 Show. 296; 3 Lev. 284; Meux v. Howell, 4 East, 1, 9 (Dr. Lawrence, J.); Wilt v. Franklin, 1 Bin. 502; Estwick v. Caillaud, 5 Term R. 420; Pickstock v. Lyster, 3 Maule & S. 371; Nicoll v. Mumford, 4 Johns. Ch. 522, 529; Small v. Oudley, 2 P. Wms. 428; Marbury v. Brooks, 7 Wheat. [20 U. S.] 556, 11 Wheat. [24 U. S.] 78. I freely admit, that when there are conditions in the assignment, as for instance, that the creditors shall release their debts, there the same presumption of assent does not arise, because it involves a question of discretion, upon which different minds may draw different conclusions. If, therefore, an assent on the part of creditors be necessary to give full effect to such an assignment, it is not complete until such assent has been expressly given. But it by no means follows, that because all the creditors do not assent, therefore, if in all other respects the assignment is valid, it is void, as to those who do assent. or, at all events, who do assent before any intermediate attachment.

The case of Widgery v. Haskell, 5 Mass. 144, has been pressed upon the attention of the court, as containing a doctrine not entirely consonant with the English doctrine, and establishing, in some sort, a rule of local law. It is a great defect in the report of that case, that the assignment and trusts are not set forth at large, so that the reasoning of the court, as applied to the state of facts, may be fully comprehended. It is somewhat difficult, indeed, to ascertain upon what precise ground the court held that assignment void. If it turned upon the point suggested by Mr. Justice Putnam in Harris v. Sumner, 2 Pick. 129, that might, perhaps, furnish of itself a sufficient ground. But various other reasons are incidentally alluded to, some of which would be fatal to the assignment in any court, and others again, upon which one might well pause before he could affirm them in judgment. I cannot admit, that there was not, in that case, a valuable consideration for the conveyance, for the grantees were creditors to a very large amount; nor that, in a conveyance professedly assigning property in trust to pay the grantees as creditors, a release is necessary on their part to give it a legal effect. See Marbury v. Brooks, 7 Wheat. [20 U. S.] 556, 578, 11 Wheat. [24 U. S.] 78. It may be a very important inquiry to repel the presumption of fraud, in the case of a mere purchase, to show, that the consideration is adequate as well as valuable. But in the case of a trust, which intends to provide for the payment pro rata of all creditors, the adequacy of the consideration seems to admit of very little debate. There is, however, a ground suggested for the judgment of great weight, and that is, that the intent apparent upon the deed was not the true intent, but that the deed was, upon a confidence not expressed, for the benefit of the debtors, and reposed in the grantees. An allusion is here probably made to the omission in the original conveyance to provide for the distribution, among the general creditors, of the surplus not absorbed by the preferred creditors.

It is not, however, my intention to go into a commentary upon the case of Widgery v. Haskell, or to question, that it was rightly decided upon its own circumstances. I must indeed confess, that some of the reasoning, used by the learned chief justice on that oc-

casion, did not then convince my mind, and upon frequent revisions since, I remain still unconvinced of its accuracy. And Marbury v. Brooks is a strong confirmation of my doubts. So far, however, as it may be presumed to stand upon local law, my duty is to follow it, and it will be performed without hesitation. I understand, then, the case of Widgery v. Haskell to have decided, that in Massachusetts an assignment to a trustee, executed by a debtor bonâ fide for the benefit of creditors, is not valid, unless the creditors are parties to, or assent to the deed. It is otherwise a naked trust, which, however good by the common law, is from the defect of equitable jurisdiction, and the nature of our local policy, utterly void. I do not understand, that the case decides that it is essential that the creditors shall be technically parties to the deed, or that their assent to it in pais would not, on sufficient proof, be valid; or that such assent may not be presumed in cases, where the common law will presume it in favor of cestui que trust or creditors; or that it is necessary that all the creditors within the scope of the assignment should be parties, or assent. If the assignment be assented to by any creditors, and be in other respects free of fraud, to the extent of the debts due to those creditors, it is valid, and subsequent attaching creditors can only avail themselves of the surplus. This is the doctrine in Hastings v. Baldwin, 17 Mass. 552, and it appears to me founded in the strongest legal sense and public convenience.

Having thus far expressed my opinion on the general principles discussed in the case, and my understanding of the qualifications annexed to the Massachusetts doctrine on this subject, it remains to examine the exceptions, which have been taken to the present assignment. Previous to the present attachment it had been executed by creditors, whose demands and claims are sufficient to absorb the fund, if it be not deemed fraudulent in point of law. Fraud, in point of fact, is not even pretended.

The first exception is, that the assignment does not purport to convey all the debtor's property, and yet it requires a general release from the creditors. Such a provision, under such circumstances, it is said, is unreasonable, and shows an intent to defeat the creditors of their just rights. It is true, that the assignment does not, on its face, purport to convey all the debtor's estate; he may, for aught that appears, have household furniture or other estate. But if he has, then the presumption of fraud is less cogent; for a debtor, conveying part only of his estate to certain privileged creditors, does not thereby necessarily impair the rights of other dissenting creditors. The argument has generally come from the other side, as repelling any inference of fraud. Such was the reasoning in Estwick v. Caillaud, 4 Term R. 420, and Wilkes v. Ferris, 5 Johns. 335. It is, however, suggested at the bar, that in point of fact

the debtor has no other property; and if material, it is asked, that the answer of the trustee may be amended so as to show it. In the present case, it does not appear to the court to be material.

2. Another exception is the imperfection of the description of the property of the debtor, referred to as in schedules (C) and (D) in the assignment, and also to the imperfection of the description of the demand of the preferred creditors in schedule (A), and of the non-preferred creditors in schedule (B); and, as connected with this exception, the power given to vary these schedules. First, as to the description of the debtor's property, the schedule (C) is as follows: "Choses in action &c. assigned. All the books of account belonging to the said Gerry Fairbanks relating to his trade and business, and all and singular the sums of money due and owing to him by notes or on account, as therein appearing, or otherwise, a particular schedule of which is to be written below as soon as the same can be made out, viz."—schedule (D)—"all and singular the goods, wares, and merchandise, stock in trade, chattels, and effects to the said G. F. belonging, being in the store or warehouse numbered twenty-seven in Washington street in said Boston. consisting of hats, furs, trimmings, Leghorn bonnets, plumes, Spanish wool, and shelac and other articles, estimated to be worth about twelve thousand dollars. All of which are mentioned in the stock (book) herewith delivered to the said Whitney, and of which a particular schedule is to be written below as soon as possible." So far as the objection here stated rests on general principles, it is certainly not maintainable. A schedule and special enumeration in detail of the property conveyed, is not necessary, in ordinary cases, to make a legal transfer thereof. It is sufficient, if there be reasonable certainty in the description of the things intended to be conveyed; and it appears to me, that here is that certainty. It is true, that in one part of the indenture, intended for the creditors, the words "twenty-seven," "Washington," and "twelve thousand" were omitted at the time of the execution thereof by mistake. But this uncertainty is cured by reference to the other parts of the indenture, which must all be taken as one conveyance. The omission of specific schedules may in some cases be a badge of fraud, but it is not deemed so in all cases; and especially would it not be entitled to this construction, where the parties expressly provided for a future enumeration, and, in good faith, as soon as could conveniently be done, accomplished it. The want of a schedule has, in many cases, been held not decisive of fraud; and the case of Stevens v. Bell, 6 Mass. 339, is directly in point against this objection. See Wilt v. Franklin, 1 Bin. 502. Whart. Dig. "Deed," I, pl. 72. Then, as to the description of the debts and claims of the preferred creditors in schedule (A), it appears to me that it is certain to a reasonable intent, and there can be no danger of mis-

taking the nature or extent of these claims, or the persons to whom they belong. Schedule (B) purports to be an enumeration of the non-preferred creditors by notes, bills of exchange, and account. The enumeration was not pretended to be complete; but as far as it went, it was possessed of reasonable certainty; and the imperfections of it were, by the very terms of the assignment, on which I shall immediately comment, authorized to be supplied. For myself, I can perceive no legal ground, upon which any schedule of the non-preferred creditors was necessary to be inserted at all. It might be convenient for the purpose of guiding the judgment of the creditors, but as all are entitled to come in, any omission, if not fraudulent, would certainly not prejudice the assignment or the omitted creditors. The same point was adjudged in Wilt v. Franklin, 1 Bin. 502, and I follow with undoubting confidence that decision. In point of fact, the schedule has since been, as far as practicable, completed, whether exactly in the manner prescribed by the assignment, I do not inquire, because nothing material in this case turns upon that point. Then, as to the clauses authorizing additions to, and amendments of, these schedules. They are in these terms: "And whereas it is the wish of the said G. F. that all his creditors may have an equal opportunity to become parties hereto, it is mutually agreed, that the term of six months shall be allowed for all persons creditors of the said G. F. to become parties to these presents, upon the express condition, however, that all persons, whose claims are not mentioned in said schedule at the date of these presents, shall make oath before a suitable magistrate of the truth and justice of said claims, if thereto required by said trustee. And it is further agreed, that such alterations and additions may be made in and to said schedules, by the mutual consent of one of the parties to each part of these presents, as shall be necessary for a more perfect and correct statement of the matters and things therein contained." These clauses are objected to, as unreasonable, and therefore fraudulent: first, because they require an oath to be made by the omitted creditors at the option of the trustee only, and not of the creditors generally, and that consequently fraudulent claims may be admitted, against the interests of the other creditors. But the trustee must be presumed to act honestly, and does, in fact, covenant with all the parties for a faithful performance of his duties. A clause reposing confidence in him in discharge of his duties can surely not be deemed fraudulent from that fact alone. If the selected trustee were notoriously insolvent, or of bad character (which is not pretended here), such a clause might be deemed an auxiliary ground for presumptive fraud. But a power of this nature simply, because it may be abused, is not to be deemed unreasonable, or fraudulent. If under it a person were fraudulently admitted as a creditor, who was not so to the full amount,

such an act would be utterly void, and the trustee responsible for his misconduct. But even in such a case the assignment would not be avoided, as to bonâ fide creditors, by such an act. It would remain good as to all the real assenting creditors. In point of fact, no person has been placed on the schedule, who is questioned as a bonâ fide creditor. Then, again, it is objected to the second clause, that it provides an unlimited power of alterations and additions by the consent of the debtor, the trustee, and any one of the other creditors. This power, it is said, is so susceptible of abuse, that it is unreasonable and unjust, and therefore fraudulent in point of law. It puts the mass of creditors completely at the mercy of any one creditor acting with the other parties. The object of this power is obviously to carry into effect, and not to subvert, the general intent of the assignment. It would be difficult, if not impracticable, to procure an assent of all the creditors to every addition of a new person to the schedules. For instance, creditors under twenty dollars are ranked as preferred creditors, and the mass of creditors are admitted to exceed eighty. It would seem unreasonable to require, that before any such small creditor could be admitted, that he should be compelled to get the assent of all other creditors, who were parties to the assignment. It is natural to suppose, that neither the debtor nor the trustee, nor any other creditor would have any interest to swell, by fraud, the list of these small creditors; and, so far as the schedule of preferred creditors could be altered, it is necessarily confined to this class of small creditors. It seems to me rather a guard upon the admission of debts, that some other creditor should concur, as well as the debtor and trustee. The whole argument, indeed, rests on the ground, that such a power may be abused, and therefore it is fraudulent ab initio. If abused, I think the fraud would make the act void; for no fraudulent act can be allowed in law or equity to prejudice the rights of bonâ fide creditors. Nor is the power, in any just sense, an unlimited power; for it is only to make such alterations and additions, "as shall be necessary for a more perfect and correct statement of the matters and things therein contained." Neither party can therefore make any alterations, which should be a fraud upon the others. My judgment accordingly is, that these clauses do not vacate the assignment in point of law. There is a suggestion thrown out under this head, that no oath is required of the preferred or other creditors, whose names are mentioned in the original schedules. But this is no badge of fraud. There is no pretence that the persons so named are not bonâ fide creditors, and an oath, as to subsequent persons, might be proper to prevent unjust claims by such persons. It was a useful precaution, not in fraud, but in favour of the real creditors.

3. Another exception is, that there is a reservation of the ultimate surplus to the

debtor; and this, it is contended, is fraudulent. But what is the nature of this surplus, as it stands on the face of the assignment? It is not of any specific sum to the debtor, whether his debts are wholly paid or not; but of such surplus only as shall remain, after indemnifying and paying fully all the creditors, who shall come in under the assignment. There is no ground for saying, that, if all his debts were paid, the debtor may not honestly reserve the surplus to himself. If there was no such express reservation, it would constitute a resulting trust by mere operation of law. If all the creditors should not choose to come in, and accept the terms of the assignment, there must necessarily arise a resulting trust, as to the surplus, in favor of the debtor; and the charge is therefore merely an expression of that, which the law would imply. Now what is there fraudulent in all this? The creditors are at liberty to come in, if they please; if they do not, the debtor stipulates, that the assignment shall not carry the whole interest, but so much only, as is necessary to discharge the debts of the assenting creditors; and the residue remains as a fund for the payment of other creditors, if they choose to attach. It is not held by a secret trust for the benefit of the debtor, but avowed to be a surplus belonging to him. The non-assenting creditors are not defeated or delayed of their legal remedy for this surplus. They may attach it by a trustee process, and appropriate it to themselves, as the debtor's property. I know no difference, in point of law, between such a case and a conveyance of property to particular creditors, as security for their debts, with a liberty to sell the property, and to pay the surplus to the debtor. The latter has never been deemed fraudulent, as to other creditors. The like objection would have lain against any assignment before any creditors had signed it, for until they had signed, there would be a resulting trust to the debtor; and yet such an objection has never, hitherto, been held valid in Massachusetts; and elsewhere it would obviously not be supported upon principles of the common law. The cases cited at the bar are clearly distinguishable. The principle decided in them is not controverted; but it is inapplicable to the circumstances of this case. In Burd v. Fitzsimmons, 4 Dall. [4 U. S.] 76, there was a trust resulting to the debtor himself, for the proportion of all such creditors as should not agree to accept thereof within nine months. This was deemed by a majority of the court a badge of fraud, under the peculiar circumstances of that case. But several other grounds were assigned for the decision by the judges, and it may be recollected, that the case turned upon an aggregate of reasons, confirmatory of fraud. In Widgery v. Haskell, 5 Mass. 144, there was a concealed trust, independent of the trusts expressed in the deed (see Jackson v. Brush, 20 Johns. 5);

and the court was apparently influenced in its decision by several concurrent grounds. Ingraham v. Geyer, 13 Mass. 146, seems to have turned upon the point, that the creditors had not assented to the assignment. But if they did not, it may be truly said, that the court did not even allude to the reservation of the surplus as a ground of judgment. In Marston v. Coburn, 17 Mass. 454, the attachment was before the assignment was executed by the creditors, so as to become a complete conveyance. In Harris v. Sumner, 2 Pick. 129, the decision rested on the reservation of a gross sum in favour of the debtor at all events, whether all his debts were paid or not, which the court thought a fraud upon the creditors. In Hyslop v. Clarke, 14 Johns. 458, there was a clause, which declared the trust for creditors void, if they refused to assent to the assignment, and reserved an indefinite right to the debtor to declare, in future, to what creditors it should be paid, and this was deemed a fraud. Austin v. Bell, 20 Johns. 442, turned upon a like principle, and it contained a reservation in favour of the debtor, like that in Burd v. Fitzsimmons. In Seaving v. Brinkerhoof, 5 Johns. Ch. 329, there was an equally obnoxious clause. No cases have been cited containing broader principles against reservations, than the foregoing, and none, to my knowledge, exist. They fail to establish the plaintiffs' argument; and although there is no case directly in point the other way, yet it can scarcely be presumed, that, if such a resulting trust could, in all cases, avoid the deed, the general rule would not have been laid down in some of the numerous contested cases of assignments. I cannot say, that such a reservation constitutes per se a badge of fraud; or that it ought to be deemed an attempt to lock up the property from creditors, if, in all other respects, the conveyance be free of taint. See Wilkes v. Ferris, 5 Johns. 335; Murray v. Riggs, 15 Johns. 571.

Another exception is to the effect of the clause for the creditors to come in within six months. It is asked, if the debtor has a right to lock up his property from his creditors during such a period, or any other, which he may choose. In all cases of this nature, a reasonable time must be allowed for creditors to come in under any assignment. What is a reasonable time is matter dependent upon the particular circumstances of each case. A time may be so short or so long, as justly to raise a presumption of fraud. It is not suggested, that six months was too long a time with reference to the present debtor's affairs; and the argument, therefore, goes to the length of overturning all assignments containing any stipulation for time for creditors, not parties, to come in. The doctrine to this extent is certainly not maintainable.

Another exception taken is to the stipulation for a release, as the condition upon which alone the creditors can take any thing

under the assignment. Such a stipulation is objected to as fundamentally fraudulent, in general principles, as an attempt to coerce creditors to unjust terms, as a means of locking up the whole property from the creditors, unless they choose to submit to compound for their debts on the debtor's own terms. The particular stipulation in the present deed is also objected to, as peculiarly noxious. To understand the nature of the latter objection, it is necessary to advert, to the terms of the assignment. It purports to be between the debtor, the trustee, and the creditors, indorsers, and sureties of the debtor. It recites the insolvency of the debtor, and the agreement to assign his property, and in consideration thereof the creditors, &c. shall release unto the debtor their claims and demands. In the close of the instrument occurs the clause in question. "The several persons, parties of the second and third part hereof (trustee and creditors), do hereby accept the said granted premises in full payment and satisfaction and discharge of all claims and demands, actions and causes of action, which they now have, or hereafter may have, by reason of holding, or having indorsed said notes or bills, or otherwise become responsible for said debts, or being otherwise creditors or sureties, as set forth in said schedules, marked A & B, and that they will not, and no person claiming under them shall sue, molest, or trouble the said G. F. or his representatives, for or on account of the same, and that they will save harmless and indemnified the said G. F., his heirs, executors, and administrators, against all claims and demands which they, or any person claiming under them, now have, or hereafter may have, for or on account of said bonds, notes, bills, and debts, or any other matter or thing, from the beginning of the world to the day of the date hereof." First, it is said, that here there is a joint covenant of indemnity, and not a several covenant by each creditor for himself; and that it is unreasonable to require them to be sureties for each other. It appears to me, that this is not the true construction of the clause. The whole must be taken together and with reference to the manifest intention of the parties. The parties severally release, and the covenant of indemnity, following in the same connexion and part of the same sentence, must be deemed several also. The words are, the "several persons" do accept, &c. and that "they will not, and no person claiming under them shall sue," &c. There is plainly a mistake in leaving out the proper and usual words of covenant before the latter clause, and such a construction must be given as is consistent with the fair, presumed intent. There are here no words of joint covenant; "they" must have for its antecedent "several persons," and if so, nothing is clearer than that the covenant is several. If there was not so strong an expression, I should have thought, that upon common principles the covenant ought to be

construed distributively and not jointly. Com. Dig. "Covenant," D 2; 1 Saund. 154, note; Ernst v. Bartle. 1 Johns. Cas. 319.

Secondly, it is objected, that the release covers not only all debts and demands for which payment and indemnity is provided, but "any other matter or thing from the beginning of the world." This, it is said, is unreasonable in itself. The words are, indeed, as broad as the objection states them. But I have very great doubts, whether, looking at the antecedent parts of the sentence, a court of law would not restrain the meaning to those claims which are positively released and covenanted not to be sued for, and especially as the assignment, in one of its recitals, comprises the consideration to such a release. Words of this nature are often found in common releases. But they have been generally restrained to the subject matter on which the parties acted. I have no doubt that a court of equity would so restrain them in this case. It does not appear to me, that they ought to be construed, as intentionally demanding a release of any claims which were not to be compensated for. But if they do, as none other are shown to exist, it would be hard to infer a fraudulent intent from what was undoubtedly the phrase of the scrivener.

A far more difficult question is that presented by the consideration, whether a debtor can rightfully stipulate for a release from his creditors, as the condition of yielding up his property to them. I am aware, that it may be said, that the property may be reached by a trustee process, so that it cannot be absolutely locked up from his creditors. But the question never can be, whether a remedy exists for the creditors, but whether the debtor has not endeavored fraudulently to delay or defeat them. This objection has struck me to be of great force, and I have paused upon it with no small hesitation of opinion. Where a debtor assigns all his property for the benefit of all his creditors, without stipulating for any favour to himself, he cannot be said to lock up his property from his creditors. The most that can be said is, that he locks it up from one, by giving it unconditionally to all. But where he stipulates for a release, he surrenders nothing except upon his own terms. He attempts to coerce his creditors by withholding from them all his property, unless they are willing to take what he pleases to give, or is able to give, in discharge of their debts. This is certainly a delay, and if the assignment be valid, to some extent a defeating of their rights. It is not sufficient to say, that it is a proposition to creditors; so would be a condition by the debtor to receive a gross sum. The object and nature of the proposition are to be considered, in order to decide, whether it be fraudulent or not. Has it not a tendency to obstruct the common rights of the creditors? Is not its design to prevent creditors from receiving compensation out of the debtor's property, without yielding up

some portion of their debts, and conferring on him a substantial benefit, which he has no legal claim to demand? In Seaving v. Brinkerhoof, 5 Johns. Ch. 329, where there was an assignment of real estate (not purporting to be all the estate of the debtor) for the use of all the creditors, upon the condition of their executing a release, that very learned judge, Mr. Chancellor Kent, held, that the assignment was, on that account, fraudulent and void, and that the condition was oppressive and without any colour of justice, as the assignment was not of all the property of the debtor, but only of a part. The reasoning of the court in Hyslop v. Clarke, 14 Johns. 459, though the case itself was distinguishable from the present, is, as far as it goes, strong against such a stipulation, where the assignment is of all the property. That case and its reasoning met the entire approbation of Chief Justice Spenser, in his able opinion in Austin v. Bell, 20 Johns. 442; and on that occasion the latter, in behalf of the court, declared, "that a deed, which does not fairly devote the property of a person overwhelmed with debt to the payment of creditors, but reserves a portion to himself, unless the creditor assent to such terms as he shall prescribe, is in law fraudulent and void, as against the statute of frauds, being made with intent to delay, hinder, or defraud creditors of their just and legal actions." Had the court considered the principle fully adopted and recognised in Seaving v. Brinkerhoof, 5 Johns. Ch. 329, and Burd v. Smith, 4 Dall. [4 U. S.] 76. Tried by this principle, the stipulation in the present case would make the assignment utterly void, for the surplus, after payment of the assenting creditors, is to go to the debtor. The question is not (I repeat it), and cannot be, whether there may not be some remedy for the creditors to intercept the surplus, but whether the intent, apparent upon the deed itself, be not to coerce them to a settlement by embarrassing or delaying their remedy. Such an intent is of itself illegal. In examining the Massachusetts Reports, the point does not appear to have met with any direct decision. In Widgery v. Haskell, 5 Mass. 144; Ingraham v. Geyer, 13 Mass. 146; and Harris v. Sumner, 2 Pick. 129,—there are intimations, which might well lead one to doubt, if the court were prepared to admit the validity of such a stipulation. On the other hand, in Hatch v. Smith, 5 Mass. 42, there was a stipulation for a release, and no exception was taken to it, though the cause was contested by very eminent counsel. The case turned indeed, in the judgment of the court, upon a point somewhat more close, for the creditors, to an amount beyond the property conveyed, agreed to the deed, before it was executed by the debtor, and the assignment was upheld. Then, again, in Hastings v. Baldwin, 17 Mass. 552, where the assignment was held not to be fraudulent, we are now told by the counsel, that there was such a stipulation, although it is omitted in the report, no question having

been raised on that point. Yet doubtless, if the court had thought such a stipulation per se fraudulent, that was as fit a case as could arise for the application of the principle. The decisions in Massachusetts, therefore, leave the question in equilibrio. But when we take into consideration the great length of time, during which stipulations of this nature have prevailed in this state, without objection, there is much reason to believe, that the profession have deemed the law settled in favour of the debtor on this point. Then, on the other hand, in Lippincott v. Barker, 2 Bin. 174, where the direct point arose, it was settled, that a stipulation for a release was not fraudulent. The reasoning of the court is limited, indeed, to the circumstances of that particular case, but it would be difficult not to perceive, that it naturally reaches further. I find also, that my brother, Mr. Justice Washington, in Pierpont v. Lord, in 1820, is reported to have held, that an assignment in trust, for the benefit of such creditors as should release their debts, is founded upon a sufficient consideration in law. Whart. Dig. "Deed," I, pl. 72. The case is not in point, but it was probably decided on the general principle. There is, however, a case in England directly in point. It is King v. Watson, 3 Price, 6, where the very exception was taken by counsel, and the assignment was held good by the court of exchequer against the claim of the crown itself.

The weight of authority is then in favour of the stipulation, for the decisions in New York did not turn upon the naked point of a release, but upon that, as incorporated into a peculiar trust. I am free to say, that, if the question were entirely new, and many estates had not passed upon the faith of such assignments, the strong inclination of mind would be against the validity of them. As it is, I yield, without reluctance, to what seems to the tone of authority in favour of them. If the result had been different, this assignment would have been void in toto, for it could not, where the fraud was apparent on the face of the deed, be good in favour of any of the creditors who had signed it. They must, under such circumstances, be deemed conusant of, and participators in the unlawful object. The doctrine in Hyslop v. Clarke, 14 Johns. 458, and Harris v. Sumner, 2 Pick. 129, on this point, is sound and wholesome. I should apply to other parties the rule there applied to the trustee.

Another exception is, that as the assignment has not been signed by all the creditors, it is void, for the parties did not intend it should have a partial operation. If indeed there had been any provision in the deed, or any settled collateral agreement, that it should be void, unless all the creditors assented, the objection would be fatal. But the assignment admits of no such interpretation; and there is no evidence aliunde to support it. The design was to allow all the creditors to come in within six months; but if they did not, then those who became par-

ties were to receive their debts, and the surplus only was to go to the debtor.

These, I believe, are all the exceptions which have been urged against the validity of the assignment; and they are overruled. It remains only to notice two points of a subordinate character. The first is, that the trustee can only retain for debts actually due to the creditors at the time of the attachment, and not for legal liabilities, though provided for by the assignment. It is sufficient to say, that this position cannot be maintained. The assignment is just as valid a security for liabilities to indorsers, &c. as for debts. Stevens v. Bell, 6 Mass. 338, is in point, if indeed so clear a principle requires support. The next is, that several of the creditors, who have signed and sealed the assignment, being partners, have executed it with a single seal, in the name of the firm and partnership, and not in the individual names of the partners, which is inoperative in law; and so far as their claims go, they must be deducted from the amount to be retained by the trustee. It is generally true, that one partner cannot bind another by deed without his consent. But one partner is competent, in his own name, or in the name of the firm, to release a debt; and for the same reason he may enter into a composition, and execute such an assignment as the present, and it will be a release of the debt. A signature and sealing in the name of the firm, with a single seal, is good, and binds all the partners, who are present, or assent to the execution. If none but the executing partner assent, it is still valid to release the debt and bind, in this respect, the rights of the firm. The authorities fully establish these principles, and they are decisive against this objection. Wats. Partn. c. 4, p. 225; Pierson v. Hooker, 3 Johns. 68; Ludlow v. Simond, 2 Caines, Cas. 1; Mackay v. Bloodgood, 9 Johns. 285; Bulkley v. Dayton. 14 Johns. 387; Bruen v. Marquand, 17 Johns. 58; Salmon v. Davis, 4 Bin. 375; Ball v. Dunsterville, 4 Term R. 313. Upon the whole, the assignment is sustained as good in point of law, and the trustee is, upon the disclosure, entitled to his discharge.