Dickman, J.
The record discloses that the creditors of' Daniel Shafer, assignor, having withdrawn their claims from the assignee, and concluded to settle the same with Daniel Shafer himself, gave their consent by a writing addressed to-the assignee, that he might, under the order of the probate court, surrender his trust, terminate the assignment, re-convey to Daniel Shafer the residue of the assigned property, and be discharged from all liability as assignee. The probate court,, upon petition filed by the assignor, found that he had either-caused to be paid or had otherwise arranged all his debts, and had produced satisfactory evidence, that all his creditoi’s had petitioned to vacate and put an end to the1 assignznent, and to have the assignee re-convey to the assignor the residue of the-property in his hands as assignee. It was thereupon ordered, by the probate court, that the assignee file his final report and settlement; that he reconvey to Daniel Shafer whatever real or personal estate might remain in his hands as assignee; that nothing in the decree should prevent the assignee re-conveying-the real estate, personal property, and any portion of the znoney and other effects he might deezn proper before his final report and settlement; and that the trust be ended by complying with the terms of the decree. The assignee settled his final account; and it was oz’dered, that a balance found reziiainingin his hands be paid over to the assignor. From this order there was no appeal, and there was no proceeding in error to-reverse it.
The court did not traziscend its jizrisdiction in directing the re-conveyance to the assignor, and the dischaz-ge of the assignee.
The assignee, the debtor, and the creditors were the only pez’sons who had the beneficial interest in the assigned property, and the power of disposal over it. They concurred in invoking the action of the court, and it is not alleged, nor was-there any fraud in obtaining the decree of the court. An insolvent, to secuz’e equality and prevent.a z-ace of diligence among his creditors, may assign his property, but, after the assignment, the creditors may, as frequently occurs, be convinced that the insolvent can realize more from his assets than an assignee, and may therefore desire to re-in vest him with-the as *61 signed property. That the assignment in such case should be canceled, with the consent of creditors, or at their instance, would be just and proper. Thus in Small v. Sproat, 3 Metc. 303, an insolvent debtor made an assignment under the statute, of all his property, which wras insufficient to satisfy the debts •of his creditors, and the assignees, with the consent of all those ■creditors, were permitted to re-convey the property to the as.signor for the purpose of enabling him to make an adjustment with them.
It is for the assignee to guard the rights of creditors, and also of the assignor; and while in compliance with the order of the court, it is incumbent upon him to reconvey all the assigned property to the assignor, that he himself may adjust the claims of his creditors it is also incumbent upon him, if in administering the trust he has paid all the assignor’s debts, to turn over to him any surplus that may then remain in his possession, or under his control. In such cases, there necessarily arises a resulting trust by mere operation of law, in favor of the debtor, which will entitle him to claim the surplus of the assignee. Brashear v. West, 7 Pet. 608; Halsey v. Whitney, 4 Mason, 206, 222, 223. And under section 6356 of the Revised Statutes, whenever, on settlement, the same shows a balance remaining in the hands of the assignee or trustee, it is to be divided pro rata among the creditors until they are paid in full, and the remainder, if any, is to be refunded to the assignor or his legal representatives.
But it is alleged substantially in the second defense of the sureties, that there was a fraudulent arrangement between Isaac M. Warwick, the assignee, and Daniel Shafer, the assignor, to defraud creditors; and that, therefore, they are discharged from liability on their bond, for the failure of the assignee to pay over to the assignor the balance of $909.05, as ordered by the court, and which balance Daniel Shafer had assigned to the plaintiffs, for value received, for the purpose of paying debts which he owed them. It is not claimed that the decree of the probate court is open to impeachment for fraud or mistake. Full knowledge of the proposed reconveyance and surrender of the trust was brought home to one of the sureties, N. E. War *62 wick, at the earlest stage, as evidenced by his attestation of the. writing signed by the creditors, and directed to the assignee. The order of the court for the payment over of the balance held by the assignee, was made after a hearing upon exceptions to the assignee’s final account; the sureties had ample time and opportunity to resist the order; and under the statute — Revised Statutes, section 6407 — an appeal may be taken to the court of common pleas, from any order of the probate court in settling the accounts of assignees, by any person against whom such order may be made, or who may be affected thereby. The sureties not having appealed or instituted proceedings in error, they, as well as their principal, are concluded by the decree of the probate court.
The principle, that a surety upon a guardian’s or adminis-* trator’s bond is concluded by a settlement in the probate court of his principal’s accounts, may by parity of reason be applied to a surety upon the bond of an assignee. In Braiden v. Mercer, 44 Ohio St. 339, it was held, that in an action upon a guardian’s bond for the recovery of the amount found due the wards upon a final settlement of the guardian’s accounts in the probate court, the sureties are concluded by the settlement, and will not be heard, in the absence of fraud and collusion, to question its correctness, or to demand a re-hearing of the accounts. The sureties are presumed to contract with reference to the jurisdiction and action of the court to which the principal may be answerable, and are bound by the judgment against them.
In Casoni v. Jerome, 58 N. Y. 321, the court say, “The question whether the plaintiff’s demand was a debt against the estate, was necessarily determined by the surrogate on the ac-^ counting, and so long as the decree stands unreversed, it cannot be questioned in a collateral action either by the administratrix or her sureties. Sureties are bound by the decree of the surrogate in such a case, because by their conduct they have made themselves privy to the proceedings against their principal, and when the principal is concluded, the surety, in the absence of fraud and collusion, is concluded.”
*63 In Little v. Commonwealth, 48 Penn. St. 337, when by -the final decree upon the account of an assignee for the benefit of creditors, he is directed to pay the claim of a specific creditor, it was held that his sureties were liable for default of payment, and could not defend on the ground that they were not bound by the decree; that the duty of the assignee was fixed by a competent tribunal whose judgment could not be tested collaterally by the bail; that the remedy of the sureties, if any, was by an appeal from the decree of distribution; but that, where no appeal is entered, they are bound by the decree, and cannot, in an action on the bond, set up that it was erroneously made against the assignee.
And in Commonwealth v. Steacy (Supreme Court of Pennsylvania, Oct. 2, 1882), “The Reporter” vol.'14, p. 667, the rule is stated, that the bond of an assignee for the benefit of creditors, is for the benefit of any one interested in the assigned estate, and a decree of distribution is conclusive as to the fact that the persons to whom awards are made are so interested ; that the only remedy against an erroneous award is by appeal, and in an action upon the bond to recover the amount of an award, neither the assignee nor his sureties can set up as a defense that the award to the plaintiffs was erroneous. See, also, Kelley v. West, 80 N. Y. 139 ; Harrison v. Clark, 87 N. Y. 572; Johnston v. Smith, 25 Hun, 171.
It is contended, that if there was a scheme between Daniel Shafer and his assignee to defraud creditors, he could not under such a contract, illegal and immoral as it would be, maintain an action against the assignee or his sureties, to recover the balance ordered to be paid over by the probate court; and that the same bar to an action would extend to the plaintiffs, who were creditors at and from the date of the assignment. Should it be conceded that the relations between the primary parties — assignor and assignee — out of which the agreement of the sureties arose, were contaminated by fraud, it is manifest that the sureties were not induced to become such by any false representations as to material facts, or by any other fraud perpetrated on them by the creditors. The sureties in their separate answer and defenses, do not charge that the creditors, or *64 any of them, have been parties to any fraudulent transaction : and the allegation, that Daniel Shafer and Isaac M. Warwiclc entered into a conspiracy, and had a secret understanding with each other to defraud creditors, should not deprive the creditors of recourse to the sureties for indemnity.
When the order of payment was made by the probate court, the plaintiffs were unpaid creditors of Daniel Shafer, and the balance in the assignee’s hands, if properly applied, would have inured to the benefit of the plaintiffs as creditors. The order was, in fact, in the interest of the creditors who had withdrawn their respective claims from the assignee, but who had not yet been satisfied. If there was a secret arrangement between Daniel Shafer and his assignee, of such a character as to furnish the sureties an available defense in an action against them by the assignor, they would 'stand in a very different attitude in an action by innocent creditors. In the one case, they might be exempt from liability, while in the other they would be bound for the delinquency of their principal. When the bond is given with sureties in an amount fixed by the court, the creditors look to it as securing the fund that may arise from the sale of property; and if there is a misapplication of such fund by the assignee, or a fraudulent collusion between him and the assignor, the creditors may have recourse to the sureties as an especial protection designed for them in such emergencies.
It is furthermore urged in behalf of the sureties, that the balance of 1909.05, was assigned to the plaintiffs to pay the identical claim they had against Daniel Shafer at the date of his assignment; that through the action of the plaintiffs and other creditors, the court by its decree of December 2, 1879, put an end to the trust; and that, although the assignee then had such balance in his hands, he was not ordered to pay it over until the hearing upon his final account, on February 17, 1880, of all which, the legal effect was, to discharge the bond signed by the sureties. The order of the court was “ that said trust be and the same is ended by complying with the terms of this decree,” which terms required that the assignee file his final report and settlement. Until he had *65 settled his account, and obeyed the order of the court in reference to the same, he would remain charged with the obligations of the trust. But this court has determined that, in cases which are somewhat analogous to the one under consideration, the surety is not released from liability by an acceptance of the resignation of his principal before the settlement of his accounts.
In Slagle v. Entrekin, 44 Ohio St. 637, the court held, that by accepting the resignation of an administrator pending the settlement of his accounts, the probate court does not thereby lose its jurisdiction over his person, or the settlement of his accounts, and may proceed to hear and determine exceptions thereto and ascertain the amount due from him to the estate, in like manner, as if he had continued in the execution of his trust; and the amount so found due will, in the absence of fraud and collusion, be conclusive, not only upon him, but upon his sureties, in an action upon the administration bond, unless an appeal has been taken, or the judgment has been reversed upon a proceeding in error. See also Casoni v. Jerome, supra. The bond of the assignee was given pursuant to the statute, was intended for his good behavior as trustee under the assignment, and it is right that his sureties should be held for his neglect to pay over funds coming into his hands during the continuance of his trust, although the amount thereof may not have been determined until his final report filed after an order of the court providing for a determination of the trust.
As a further defense by the sureties, it was alleged, that from the 2d day of December, 1879 — when, they say, the trust was ended — there had been no successor appointed to whom the assignee could legally pay over the. money remaining,in his hands at that time; that at that time, there were other creditors of Daniel Shafer besides the plaintiffs not paid in full, and entitled to a p¡ o rata share of the balance of $909.05; and that four years had not elapsed since that time, within which such creditors who had been fraudulently settled with, would have a right to have a trustee appointed by the court, *66 who would be the assignee’s successor, and alone authorized to receive and receipt for such balance. -This defense of the sureties should not avail. It will readily occur upon examination of the- record, that no creditors complain of any fraud upon their rights. They asked, not for the appointment of a successor to the assignee in the administration of the trust, but that the trust might be ended; and, in accordance with their request, the trust was terminated, and the balance remaining in the hands of the assignee ordered to be paid over to Daniel Shafer.
We find nothing in the separate answer of Isaac M. Warwick — in which he acknowledges and explicitly sets forth his own fraudulent motives and conduct as assignee — that requires any further consideration than what we have already given to the defenses of the sureties contained in their separate answer. It is our opinion, therefore, that the judgment of the circuit court should be reversed, and the judgment of the court of common pleas affirmed.

Judgment accordingly.