## TODD vs. BUCKNAM.

A provision, in a general assignment for the benefit of creditors, requiring an absolute release of all claims and demands against the assignor in consideration of such assignment, does not affect its validity.

Nor will a provision requiring the surplus, should there be one in the trust property, to be paid over to the assignor, vitiate the assignment.

The assent of creditors cannot be *presumed* to an assignment which stipulates for a credit of six months for the balance that may remain unpaid after the assignee shall have executed the trusts therein imposed.

The trust property under a general assignment may be *attached* by a dissenting creditor, if not wanted to satisfy the claims of those creditors who had become parties to the assignment prior to such attachment ; — the trustee process, though the usual, not being the only remedy in such case.

Though by the assignment the *nominal value* of the property be greater than the amount of the debts of the assenting creditors, yet, in an action between the assignee and an attaching creditor, the former may show that the *real value* is less than the amount of such debts.

TRESPASS, *de bonis asportatis*. Plea, the general issue, with a brief statement. The plaintiff claimed title to the goods in question under a certain deed of assignment made and executed on the 18th of *May*, 1832, by one *Cornelius W. Austin*. Beside said *Austin*, and *Todd* the assignee, it was also executed by *Gardner*, *Waite*, and *Heywood*, three of the creditors of said *Austin*. *Todd*, *Waite*, and *Heywood* resided in *St. Stephens* in the Province of *New Brunswick*. *Gardner* resided in *Calais*. *Austin* resided in *St. Stephens* but had his store and traded in *Calais*. By the assignment all other creditors of the said *Austin*, might become parties thereto at any time within three months from its date. The provision respecting the release of claims by the creditors was in these words : " and they hereby release the said *Austin* and his legal representatives from the said claims and demands, &c. so far as said claims and demands shall be paid, and so far as they shall be saved harmless from their said liabilities by the application of the said trust moneys thereto, in manner aforesaid, and no further."

After directing the distribution of the trust moneys among the parties creditors, the assignment proceeded ; " and then in trust to pay over *the surplus* if any, to the said *Austin* or to his agent, representative, or to his, or their order in writing."

By the schedules annexed to the assignment it appeared that the amount of property and debts assigned was,            $2307,71

That the amount of debts due to the creditors who had formally assented to the asssignment, was,            $1490,43

Leaving an overplus of property in the hands of the assignee, of    -       -       -       -       -       $817,28

The defendant, late sheriff of the County, justified the taking by virtue of a writ of attachment issued *May* 31, 1832, in favor of one *Joseph Prescott*, against the said *Austin*, on a note of hand for $426,19, dated *January* 2, 1832, payable to *Richardson & Whitney* of *Boston*, and by them endorsed to *Prescott*; by virtue of which writ the defendant *attached the goods* to the amount of $490,48.

There was some evidence tending to show that the note sued was still the property of *Richardson & Whitney* though endorsed to *Prescott*. The cause was committed to the jury by *Weston J.* to find for the plaintiff the amount of damages; — and they were also instructed to find whether the property in the note in question was in *Prescott* or in *Richardson & Whitney*; — the jury found for the plaintiff, assessing damages at $490,48; — and that the property in the note sued was in *Richardson & Whitney* and not in said *Prescott*.

If upon the foregoing evidence the plaintiff was not entitled to maintain this action, the verdict was to be set aside and a new trial granted; otherwise judgment was to be entered thereon.

*Greenleaf* and *Bridges*, for the defendant, contended that the assignment was fraudulent and void, because; 1. it gave to the assignor the exclusive control of the surplus funds, subjecting them to his *order:* and 2. because it required a release from the creditors for the amount received, and *a credit* of six months for the balance.

They also contended that the attachment should be sustained, the creditors in the assignment being *foreigners*, while the real attaching creditor (according to the finding of the jury) was a citizen of *Massachusetts*. The latter is to be preferred. But if it were not so, and the citizen of *Massachusetts* stood on no better ground than a foreigner, still, the attachment should have preference, because *Prescott*, a citizen of this State, has an interest in

*Todd v. Bucknam.*

it. He has a lien upon the note for his expenses, commissions, &c. — and for any claim which he may have against *Richardson & Whitney.*

The attachment might well be made on another ground. The amount of property is far beyond what is necessary to pay the demands of the assenting creditors. The surplus therefore is attachable. And more especially so in this case, the assignee being a foreigner and not liable to our trustee process. To the several points made they cited, *Boyden and al.* v. *Sumner,* 4 *Pick.* 266; *Fox* v. *Adams and al.* 5 *Greenl.* 245; *Ingraham* v. *Geyer,* 13 *Mass.* 146; *Boston* v. *Boylston,* 4 *Mass.* 324; *Borden and al.* v. *Sumner,* 4 *Pick.* 266; *Ward and al.* v. *Lamson and trustee,* 6 *Pick.* 358.

*Allen* and *Downes,* for the plaintiff.

There is no surplus of property in the hands of the assignee beyond enough to satisfy the claims of the creditors who have assented to the assignment. Nine hundred dollars of the amount is in balances of accounts which are really worth little or nothing, and the remainder is in personal property on which there will be much loss. But if it were otherwise, a creditor to avail himself of a surplus in the hands of the assignee must resort to the *trustee process;* — unless the surplus be so large as to be evidence of *fraud* in the assignment, which is not pretended in this case. It is not competent for a creditor to step in by his attachment and make a selection from the property to satisfy his own debt, leaving a large amount of doubtful claims to satisfy the demands of the creditors in the assignment.

There can be no preference in this case on account of a portion of the creditors and parties to the assignment being foreigners, for the jury have found that citizens of another State were the real attaching creditors. They therefore in this respect stand on equal ground.

But if the nominal amount of the property assigned was the real value, and there should appear to be a surplus in the hands of the assignee, he should hold that surplus for the benefit of other creditors who became parties to the assignment after the attachment. Their assent might well be *presumed,* on the authority of *Halsey* v. *Whitney,* 4 *Mason,* 206.

MELLEN C. J. delivered the opinion of the Court.

This is an action of trespass *de bonis asportatis.* The plaintiff claims title to the goods in question under a certain deed of assignment made and executed on the 18th of *May, A. D.* 1832, by *Cornelius W. Austin,* the assignor, to *Robert M. Todd,* the plaintiff and assignee, and three of the creditors of *Austin.* It was executed in *Calais,* in this county. The defendant, late sheriff of the county, justifies the taking by virtue of a writ of attachment in favor of one *Joseph Prescott,* against the said *Austin.* The attachment was made on the 31st of *May,* 1832. Several objections have been urged by the counsel for the defendant against the validity of the assignment, and against the plaintiff's right, on any ground, to maintain this action: and on the part of the plaintiff it has also been urged that the conduct of the defendant, in violating the plaintiff's possession of the goods in question and taking and carrying them away, cannot be justified by the process which he executed. There is no intimation of *actual* fraud in respect to the assignment; but it is contended that it contains certain provisions which, in legal contemplation, render the assignment void and inoperative.

One objection to the assignment, as it respects the creditor whom the defendant represents, is, that it is made to an assignee living out of this State, to secure his debt and the debts of two other foreign creditors, and to the prejudice of *Joseph Prescott* of *Calais* — one of our own citizens; contrary to the well known principle, recognized and sanctioned in *Fox* v. *Adams and trustees,* 5 *Greenl.* 245. The answer to this objection is, that though the action, in which the attachment was made, was brought in the name of *Prescott* of *Calais,* still the jury have found that the property of the note sued was not in *Prescott* but in *Richardson & Whitney* of *Boston,* who also live out of this State. As to this point the *real* creditors claiming under the attachment, and *Todd,* claiming under the assignment, both stand on equal ground; and therefore the principle of policy on which the distinction, which has been invoked, reposes, does not apply in the case before us.

Another objection is that all creditors who should execute the assignment should cause their claims to be written on the

schedule B. Surely a compliance with this provision could be neither an injury or inconvenience to any creditor; and could not produce any but useful results. Indeed, it was merely suggested by the counsel.

Another objection urged, is, that the assignment requires that every creditor shall execute a release to *Austin* of all claims and demands against him, *so far* as such claims and demands *shall be paid*, or they shall be *saved harmless* from their *liabilities* by the application of the trust funds thereto, in the manner prescribed in the assignment, *and no further.* This amounts to a release of no subsisting claim; it is a mere provision that a partial payment shall amount to a discharge *pro tanto.* But, as the objection has been made, we will go further and state explicitly, that if the assignment had provided for an *absolute release* of *all claims* and *demands*, in consideration of the assignment, it would not have impaired the validity of it. In *Hatch* v. *Smith*, 5 *Mass.* 42; *Marston* v. *Coburn*, 17 *Mass.* 454; *Andrews* v. *Ludlow*, 5 *Pick.* 28, and *Lupton* v. *Cutter*, 8 *Pick.* 298, there was a provision for a release of debts by the creditors: yet it was not considered by the counsel or the court as affecting the validity of the assignments. In *Halsey* v. *Whitney*, 4 *Mason*, 206, a review of all the cases, bearing on the point, and a careful examination of them, led the learned Judge to the conclusion that the assignment was valid, though containing a general release of the debtor, by the creditors. This Court, in *Fox* v. *Adams and trustees*, before cited, evidently concurred in that opinion, though the cause was decided on another ground. And in the *Canal Bank* v. *Cox and trustees*, 6 *Greenl.* 395, it was expressly decided, though the opinion seems to have been misunderstood, that a provision for the release of the assignor and his indorsers and sureties, did not, in any manner, invalidate the assignment. We have here alluded to the foregoing decisions for the purpose of clearly expressing our opinion on the point, and the principles and grounds on which it rests.

Another objection to the assignment in the present case, is, that it contains a provision for the payment over to the assignor of the *surplus*, if any, after paying certain *preferred* creditors, and the *other* creditors who should become *parties* to the assignment, by *signing* and *sealing* the same. This *surplus*, would, of course,

include the sums due to creditors who *declined* or *neglected* to be-come parties to the assignment, in the manner before mentioned. In the case of *Andrews* v. *Ludlow,* above cited, there was a sim-ilar provision, which, however, was not considered as impairing the effect of the assignment. In *Halsey* v. *Whitney,* 4 *Mason,* 222, a provision of the same nature was critically examined by *Mr. Justice Story* with his usual *acumen.* He observes, " What is the nature of this surplus as it stands on the face of the assign-ment? It is not of any specific sum to be paid to the debtor, whether his debts are wholly paid or not, but of such surplus only as shall remain after indemnifying and paying fully all the creditors who shall come in under the assignment. . There is no ground for saying, that if all his debts were paid, the debtor may not honestly reserve the surplus to himself; if there was no such reservation, it would constitute a resulting trust by mere operation of law ; if all the creditors should not choose to come in, and ac-cept the terms of the assignment, there must necessarily arise a resulting trust, as to the surplus, in favor of the debtor, and the charge is therefore merely an expression of that which the law would imply. The creditors are at liberty to come in if they please ; if they do not, the debtor stipulates that the assignment shall not carry the *whole* interest, but *so much only,* as is neces-sary, to discharge the debts of the° assenting creditors : and the residue remains as a fund for the payment of other creditors, if they choose to attach." Here is a lucid statement of the law . upon this subject, and of the reasons on which it is founded. We forbear citing any other cases to this point.

Another objection urged against the plaintiff's right to maintain the action, is, that it appears by the schedule of property assigned, compared with the amount of the debts due to the creditors who have signed and sealed the assignment, there is property enough in the hands of the assignee to pay those debts and satisfy the claims of the attaching creditor also. This objection is *now* men-tioned for the sake of order ; it will be noticed again in the close of this opinion, after we have considered some of the points relied on by the plaintiff, against the right of the defendant to take the goods in question out of his possession.

In the first place, by way of answer to the defendant's last ob-jection, it is contended that the consent of *all* the creditors, named

in the schedule of creditors, is to be presumed; because, by the terms of the assignment, such assent must have been for their interest; as no release was required, or discharged for anything beyond the sum paid. The reasoning of the court in *Halsey* v. *Whitney,* has been appealed to in support of this argument. In the case before us the assignment *excludes* all *implied* or *presumed* assent, and requires it to be manifested under the creditor's hand and seal, as before stated. It also requires that every creditor who shall come in under the assignment, shall give *six months* credit for the balance of his demand, after deducting the amount received by him out of the trust fund, calculating the six months from the time when the trustee shall have executed the trust, on the penalty of forfeiting such balance, by instituting process for recovery of it within that time. Can the court *presume* an assent to these terms? They are so manifestly in derogation of a creditor's rights as, in our opinion, not to justify the presumption of assent. In addition to this we would refer to the case of *Russell and al.* v. *Woodward,* 10 *Pick.* 408, in which the assignment required *no release;* but the trustee was directed, after deducting necessary expenses, &c. &c. to pay the amount of the trust fund among all the creditors in rateable proportions : hence it was contended that the assent of creditors must be presumed. But *Shaw C. J.* in delivering the opinion of the Court, says, "It must be considered that by assenting to and affirming such an assignment, the creditors do in effect consent that the whole of such insolvent's available property — shall go into the hands of a stranger, appointed by the debtor and under his direction. We think it would be difficult to presume, without proof, that the creditors have assented to an arrangement which thus defeats their legal remedies, especially against a creditor, who by bringing his suit and *attaching the property,* has expressed his dissent from, and disaffirmance of the assignment."

It has also been made a question whether the process to which *Prescott* resorted is a legal one, and compatible with the rights of the assignee, when the object of the attaching creditor is to avail himself of that portion of the property assigned, which may not be wanted for the purpose of satisfying the demands of those creditors who have come in under the assignment prior to such

attachment. It has been said, that it produces an unnecessary derangement and delay, prejudicial to the interests of all concerned. On the contrary, *by our law*, a creditor *generally* has a right to attach the property of his debtor and take it out of his possession and retain it until judgment, notwithstanding the inconvenience and delay and expense which it may occasion. In the above cited case of *Russell and al.* v. *Woodward*, it appears the defendant attached the goods, then in question, as a deputy sheriff, in behalf of a creditor of the assignor, though the usual course has been to use the trustee process as the remedy in such cases; yet the learned counsel who argued the cause, did not notice the *attachment* of the goods as an illegal or objectionable proceeding. In the present instance a trustee process would not have availed; as the assignee is an inhabitant of the province of *New Brunswick*, where, we are informed, no such process could be sustained in such a case as this: We apprehend the action of the attaching creditor and the attachment made by the defendant, were not, in a legal point of view, objectionable.

The only remaining question is, whether the verdict, which was returned for the plaintiff, ought to stand, according as the facts appear on the report of the Judge, or be set aside and a new trial granted. By the report it appears, that the amount of property and debts assigned, was - - - \$2307,71 and that the amount of debts due to the creditors who have formally assented to the assignment, are only 1490,43

Leaving an overplus of property in assignee's hands of \$817,28 If the facts are *in reality* such as they thus *appear* to be, there can be no reason why this action should be maintained, and the attaching creditor defeated in the pursuit of his legal rights. The counsel for the plaintiff, however, alleges that the debts assigned are of very little value in fact: and, with the property assigned will not prove sufficient to satisfy the claims of the creditors who have assented to the assignment. If the fact be so, on a second trial, the plaintiff will have an opportunity to prove it. As we were satisfied from the examination of the report, that there must be a new trial, we have deemed it proper and useful to give our opinion upon all the points of law that were raised, so that another trial may be final in all respects.

Accordingly the verdict is set aside and a new trial granted.