HEMAN HOYT v. BENJAMIN SWIFT and JOSEPH BLAKE, Trus-
tees of JOHN BALL.

A trustee action can be maintained only for such a debt as the principal
debtor could himself enforce by an action *at law*.
Where a debt for land is to be paid when an incumbrance is removed there-
from, the incumbrance, if a mortgage, must be removed *at law*, by a deed
from the mortgagee, or by his discharge on the record, according to the
statute.

TRUSTEE PROCESS. It appeared from the disclosures of
the trustees, and the testimony introduced before the county
court, that John Ball, father of the principal debtor, died
previous to 1830, leaving five children, viz. John Ball, the
principal debtor, Abigail W. Ball, Hannah P. Ball, George
W. Ball, and Lydia Ball, heirs to his estate, who were all

minors. Eunice Ball, the widow of the intestate, was appointed administratrix of the estate of her husband, and also guardian of said minor children. She made application to the probate court for a division of the estate among the heirs, and a committee was appointed, by the probate court, to make such division, and, in making the division, the committee set to John Ball, (the principal debtor,) all the lands in Fairfield, (describing them by metes and bounds,) which lands they appraised at $1,425,00, being $602,13 more than his share, and "assessed" him to pay Hannah P. Ball that sum. Hannah afterwards died without having received her share. She left no issue, nor was administration ever taken of her estate. Her brothers and sisters and mother inherited her estate, and were each entitled to a distributive share.— Abigail W., after she became of age, executed a receipt to Eunice, (the mother,) John, George W., and Lydia Ball, in full, for one fifth part of the estate of the said Hannah, deceased, and the said Eunice, as guardian of the said George W. and Lydia, while they were minors, executed a release, under seal, to John Ball, (the principal debtor,) of the said minors' share of the said Hannah's estate. Prior to the execution of these instruments, the said Eunice executed to said John a quit claim deed of certain lands, which deed purported to convey to the said John all her interest in the estate of the said Hannah, deceased. The said John exchanged the lands set to him by said committee, with Abisha Allen, for a farm in St. Albans, and to secure the said Allen against the claim of the heirs of Hannah P. Ball upon the lands set to said John by said committee, which was then deemed an incumbrance upon said lands, the said John executed to said Allen a mortgage of a part of said farm in St. Albans. In May, 1835, Benjamin Swift, one of the trustees, purchased the said farm in St. Albans of the said John, and, as the said mortgage and other incumbrances were then upon it, executed a note, in part payment for said farm, to Joseph Blake, of the following tenor :

"On the 15th day of December next, for value received I promise to pay Joseph Blake four hundred dollars with interest from date ; *Provided*, however, that before payment of this note, or any part thereof, shall be made or demanded, all incumbrances on a farm of land deeded to me by John

Ball on the fourth day of May, instant, being the farm pur-
chased by said Ball of Abisha Allen, and on which said Ball
now lives, which were on the same at the time of said deed,
shall be removed therefrom.    And unless such incumbrances
shall be removed before the said 15th day of December next,
I am to pay no interest on this note after that date until said
incumbrances are removed.

FRANKLIN,
*January,*
1841.

Hoyt
*v.*
Swift *et al.*

  May 6, 1835.        BENJAMIN SWIFT"

One of the incumbrances upon the farm conveyed to said
Swift was an attachment in favor of Green & Blake, of Swan-
ton, and to remove the attachment, Joseph Blake became
surety for said John, and to secure said Joseph for so becom-
ing surety, and also to secure a debt due to him from said
John, the above described note was executed to said Joseph
at the said John's request, which note was delivered to said
Joseph, who retained it in his possession.    At the time of the
service of the process in this suit, all the incumbrances upon
said farm had been removed, except the mortgage to Allen,
which remained undischarged upon the town records, and the
price agreed to be paid by said Swift for said farm had been
previously paid, except the above described note.    Swift, not
being satisfied that the receipts and releases were a sufficient
discharge of said mortgage, declined paying the note for that
reason.    The amount of the said John's indebtedness to the
said Joseph, including what the latter had paid as surety, was
considerably less than four hundred dollars.

  The county court decided that the said Swift was liable to
the plaintiff as trustee in this suit, for the balance of the four
hundred dollars specified in said note, and interest thereon,
after deducting therefrom the amount due from the principal
debtor to said Joseph Blake, and the trustees' costs, and that
said Joseph was to become liable, as trustee, in this suit for the
same balance, if it should come into his hands, and rendered
a judgment accordingly.

  To this decision the said Swift, trustee, excepted.


  *A. O. Aldis,* for Swift, the trustee who excepted to the
decision of the county court, contended, that the principal
debtor must have a legal interest, which he could enforce
against the person charged as trustee, otherwise such person
could not be held liable as trustee; that a mere equitable in-

terest, which the principal debtor might enforce in chancery, could not be attached by the trustee process, and cited 16 Mass, 522. Id. 62. 7 Mass. 438. Id. 259; that, in this case, the principal debtor could not maintain an action, in his own name, upon the note against Swift, nor could Blake maintain an action upon it, until the mortgage to Allen should be discharged upon the town records.

*S. S. & G. W. Brown* for plaintiff.

There was no incumbrance on the land purchased by Swift of Ball, at the time the note to Blake was executed.

The mortgage to Allen, executed by John Ball, on the land in St. Albans, was given to secure Allen against the claims of the heirs of John Ball, deceased, on the lands in Fairfield. These heirs had no claims. The committee had set over the lands to John Ball, the younger, and their doings, when accepted by the court of probate, and duly recorded, conveyed the title to John, absolutely and unconditionally.

The passing of the title did not depend upon the payment of the money, but upon the adjudication of the court of probate.

The evidence of title was to be found on record in that court, and a purchaser would take the land, whether the money, ordered to be paid to the co-heir, had been paid or not.

It is to be presumed the court of probate required the money to be paid, or secured, before the doings of the committee were accepted and recorded, and this presumption is not to be rebutted by parol.

The statute does not make the payment of the money, assessed by the committee, a condition precedent, but only intends to prescribe the mode by which the committee shall equalize the shares.

The sum of $602,00, which John Ball was directed and adjudged to pay, was a debt against him, in favor of Hannah Ball, and can be viewed in no other light.

If this debt was a lien upon the land assigned to John Ball, then the mortgage to Allen, of the land purchased by Swift, was an incumbrance, and the inquiry now is, has this incumbrance been removed? The claim of Hannah, at the time of her decease, was a mere chattel interest, and she

could release that interest, either by a deed of the land, or a discharge of the debt. Had Hannah, in her lifetime, brought her action of ejectment for the land, would not the proof of an absolute and legal discharge of the debt have been a sufficient answer to that action ?

The evidence of such release or discharge might depend upon oral or written testimony. Either must have been sufficient to defeat her right. The heirs of Hannah could take no greater or further interest in the land than she had at the time of her decease ; and, if her release of the debt would have discharged the lien, so will the releases of her heirs.

The mother has released, by deed ; the others, who are of age, by receipts not under seal, and the guardian of the minor heirs, by release under seal.

No doubt can exist as to the right of the guardian to release the claims of the minor heirs. The statute has given the control of the property of the ward to the guardian. The guardian can collect, receive, and discharge the demands of the ward, and this debt could well be discharged by the guardian. If the guardian squanders the property, the wards must, and can, look to the bond of the guardian for any injury they may sustain.

The opinion of the court was delivered by

COLLAMER, J.—Our trustee process is but the attachment of debts ; choses in action, instead of choses in possession, or in common with them. They must be such debts as the defendant can enforce in his own name. I speak not now of an action by a creditor, claiming from a fraudulent purchaser, provided for by a recent statute. When the trustee is pursued for a debt, he must be an actual debtor by a debt now due, or *solvendum in futuro*. This was fully decided in *Sargent* v. *Leeland*, 2 Vt. R. 280. *Hutchins* v. *Hawley et al.* 9 Vt. R. 295, and in *Hitchcock* v. *Edgerton*, 8 Vt. R. 202. The debt, too, for which the trustee is pursued, must be a debt which the defendant could himself pursue at law. It is impracticable thus to enforce a mere equity claim. The want of chancery power, in the county court, to call all the parties incidentally interested before them, and to pursue such a course as to determine their respective and conflicting rights, renders it impracticable. Otherwise two or more co-

partners might be called in as trustees of another partner, and compelled to render an account of the whole co-partnership, and strike the balance between themselves and their co-partner, and thus wind up a long and intricate concern, without the intervention of an auditor or commissioner, and in the absence of their co-partner ; and all this, too, when the principal debtor could have sustained no action at law.

In this case Swift executed his note, at Ball's request, to Blake, and which Blake holds for his liabilities for Ball ; and all this in good faith. It is not a case of a note taken to Blake for Ball, as a naked trustee, without interest, nor done to avoid the debts of Ball. Ball could sustain no action at law, against Swift ; neither can he sustain any action against Blake, for Blake has received nothing, not even enough to pay his liabilities.

A condition was annexed to the note of Swift, that he was not to pay until the mortgage on the land was removed therefrom. That mortgage was to Allen, to secure him against the claims of the heirs of John Ball, deceased, and of Hannah Ball. It may be possible that the receipts of these heirs and their guardians would be a sufficient security that they never will or can claim any thing. But Swift had the right to annex what condition he pleased to his contract. He did annex the condition that he was not to pay until the incumbrance was removed from the land. The clear meaning of that is, that it should be removed in a manner known to the law, that is, by deed from Allen, the mortgagee, or by his discharge on the record, according to the statute. Swift is not to be compelled to pay and then take on himself the risk of future controversy with those heirs and with the mortgagee, who will not be bound by any adjudication which can be made in this proceeding, to which they are not parties. The impropriety of attempting to sustain, at law, a proceeding involving the respective and conflicting obligations, rights and duties of so many persons, not parties to the record, is quite too obvious to require further remark.

Judgment reversed, and judgment that Swift & Blake are not trustees.