# Wright *v.* Henderson.

A deed of trust is not void as to subsequent creditors, unless it is expressly found by the jury that it was made with an intent to defraud the subsequent creditors of the grantor.

If a trust estate is more than sufficient to pay the trust debts, or the trustee is remiss in executing the trust, the appropriate remedy of the other creditors of the grantee is by bill in equity.

IN ERROR from the circuit court of the county of Tippah.

B. D. Howard for plaintiff in error,
Cited, 2 Starkie on Ev. 361; 1 Story Eq. 352; 3 J. Ch. Rep. 281; 5 Peters Con. R. 419; 2 Story's Eq. 360; H. & H. Dig. 654; 4 Phil. Ev. 384; 2 Kent. Com. 538.

N. P. Price on the same side.

Gholson *contra,*
Cited, 3 Yerger, 502; 4 Ib. 841; 8 Yerger, 417; Meigs, 581.

Mr. Justice Turner delivered the opinion of the court.

It appears from the transcript of the record before us that Henderson obtained judgment against one Miles Wofford, on a note of hand for two hundred and ninety dollars forty-seven cents, dated the 14th of January, 1842, payable one day after date, on which credit is indorsed for eight dollars eighty-eight cents; that a writ of *fi. fa.* issued on said judgment on the 20th of April, 1842, which was levied on a slave by the name of Washington ; and D. B. Wright, the plaintiff in error, claimed the slave as trustee for the use of B. and W. M. Wofford. An issue was made up to try the right of property, according to the statute in such case made and provided, and the same was tried before a jury, and a verdict rendered in favor of the plaintiff in execution. The claimant moved for a new trial, which was overruled. A bill of exceptions was

taken to the decision of the court, which sets out the evidence given on the trial.

In the first place, the execution and sheriff's return were read, and the sheriff being sworn as a witness, testified that he found the negro in question in the possession of the defendant in execution, Miles Wofford, which was all the evidence offered by the plaintiff in execution in the first instance.

The claimant then introduced a deed of trust, dated 20th of May, 1840, between Miles Wofford, of the first part, Daniel B. Wright, of the second part, and Benjamin Wofford and W. M. Wofford of the third part, all of the county of Tippah, reciting the indebtedness of Miles Wofford to Benjamin Wofford in the sum of two hundred and twenty-eight dollars seventy-eight cents, by two several notes, due in December, 1839, and May 1840; reciting also, that said Benjamin Wofford was surety for said Miles, in two other sums amounting to about eight hundred dollars, then in suit; reciting also, that the said Miles was indebted to said W. M. Wofford in the sum of one thousand six hundred and thirty dollars, by three several notes of hand, viz: one for eight hundred dollars, due in 1834; one for six hundred dollars, due in May, 1840 ; one for two hundred and thirty dollars, due in May, 1840; reciting also, that the said *cestui que trusts* were jointly bound as surety for the said Miles in a note for five hundred dollars, due in 1839 : in consideration whereof the said deed was made, conveying three hundred acres of land in said county, on which the said Miles then lived, sixty shares of bank stock in the Union Bank of Mississippi, also the growing crop, two negro women, the boy Washington, two negro children, and a quantity of stock, farming utensils, kitchen and household furniture, conditioned for the payment of said several liabilities by the 1st of December, 1840, and in default thereof, the property to be sold on the premises, on ten days notice, for cash ; and provided that Miles Wofford should hold possession of the trust property, until necessary for the trustee to take it into his possession, in order to sell, to fulfil the trusts aforesaid, which deed was proved the 20th of May, 1840, and filed for record in the office of clerk of the probate court of said county, on the 2nd of June, 1840. A receipt appears on the deed in these words, " received on the within deed in trust two thousand

five hundred and eighteen dollars forty cents, September 5th, 1842, (signed,) D. B. Wright "trustee."

The claimant then introduced another deed of trust between the same parties, dated 9th February, 1841, reciting the like indebtedness, property and intention of the parties as to the object of the trust, and time of sale, but changing the time of notice from ten days to six months, in order to conform to the statute of the state; proved on the 23d of February, and filed for record on the 24th of February, 1841.

Miles Wofford was then introduced and sworn as a witness, who testified that the debts provided for by said deeds were justly due, and that the amount of money mentioned in the said receipt was raised by the sale of the property conveyed in said deeds of trust, and not otherwise; that he had used and sold part of the property, but had accounted and paid for the same to the *cestui que trusts;* that he valued the land at from fifteen hundred to two thousand dollars, but that it had been sold under execution to satisfy a judgment recovered for one of the debts covered by the deed of trust, for eight hundred and twenty-five dollars; valued the negro boy Washington at four to four hundred and fifty dollars, but sold at the trust sale for four hundred and ninety dollars; and Charlotte and child, Mary, Milly and Sukey for five hundred and sixty-one dollars; the proceeds all credited on the deed of trust, having been sold after due notice for six months published in the Holly Springs Guard.

Henderson, the plaintiff in execution, then introduced Daniel McKinzie as witness, who testified that he attended the sale of the land when sold under execution in the case of G. May *v.* Miles and Benjamin Wofford, amounting to about six hundred dollars, intending to bid for it, but from a conversation he had with W. M. Wofford, he did not bid, and does not know that he would have bid under any circumstances; but W. M. Wofford talked of bidding for the land, and that if he did, he proposed selling it to him (McKinzie) at two thousand dollars, part to be paid in a claim of McKinzie against Miles Wofford, amounting to four hundred dollars. McKinzie further stated that the land and slaves were worth about two thousand nine hundred dollars at the date of the deed of trust.

46*

The claimant D. B. Wright called Samuel M. Pryor as a witness, who testified that the sale of the land was open and fair, that it was made at the court house, and there were several bidders for the land; that Henderson the plaintiff in execution "ran Wofford up to eight hundred and twenty-five dollars, when the land was knocked off to Wofford for that price."

This being the substance of the evidence, the jury found a verdict for the plaintiff in execution. The claimant, Wright, moved for a new trial, which was overruled, and he took a bill of exceptions to the decision of the court, overruling the motion, and the foregoing is the evidence, in substance. The deeds of trust, the judgment and execution of May *v.* Wofford & Wofford, and forthcoming bond, are embodied in the transcript of the record. Wright then sued out this writ of error.

The amount of the liabilities and claims of the *cestui que trusts* was upwards of three thousand dollars, besides interests and costs. The land and slaves were valued by the witness, McKinzie, at about two thousand nine hundred dollars; and there was no evidence of the value of the stock and other moveable property. The land and slaves, and other effects, amounting to two thousand five hundred and eighteen dollars and eighty cents, were sold, and the amount was credited on one of the deeds of trust.

Henderson's debt had its origin nearly two years after the making of the deed of trust. No creditor is before the court whose debt was in existence at the time of the execution of the deed of trust. The deed is not void as to a subsequent creditor, unless it were expressly found that it was made with a view and intent to commit a fraud on those who might subsequently give credit to the grantor.

If a trust estate is more than sufficient to pay the trust debts, or if a trustee is tardy in bringing the trust to a close, the appropriate remedy of creditors not embraced in the deed of trust, is by bill in chancery to compel a fair settlement, to have the debts secured by the trust deed paid off, and a decree for the residue, if any, in favor of other creditors. Forced sales of property, with clouds hanging over the title, will generally result in injury to the debtor, creditors and purchasers. A bill in chancery, with proper parties, is best calculated to answer all the ends of justice, in cases of incumbered titles. Judgment reversed, and new trial granted.