HENRY F. SMITH, surviving Partner, *vs.* THOMAS A. MILLETT, Trustee.

W. CONGDON & SONS *vs.* SAME.

Voluntary assignment for the benefit of creditors executed by H. & Co. to M., in trust, June 2, 1874, providing that such creditors as do not within three months execute and deliver to the assignee full discharges of the assignors shall not receive any dividends, but the dividends on the claims of such creditors shall be paid over to the assignors or their appointees. Creditors of the assignors brought suit against them, serving their writs by foreign attachment on the assignee, July 18, 1874, and September 14, 1874, and recovered judgments amounting to about $16,000.

The garnishee's affidavit, made December, 1874, admitted collections on hand of about $10,000, and goods, &c., valued at about $13,000, subject to mortgages of $4,500.

At the time of service of the first writ, July 18, 1874, no releases had been made.

At the time of service of the last writ, September 14, 1874, claims amounting to about $43,000 had been released, while other claims were not released, or the validity of the releases was questioned.

In actions against the assignee as garnishee, brought by the above judgment creditors : —

*Held*, that at the time of the attachments all the goods and moneys in the assignee's hands were subject to the trust of the assignment.

*Held*, further, that although the creditors of the assignors who did not release might maintain a bill to compel the assignors and assignee to apply any surplus to their claims, yet the assignors could bring no action, either at law or in equity, against the assignee, there having been, so far as appeared, neither misconduct nor needless delay on the part of the assignee.

*Held*, further, that the creditors' actions against the assignee would not lie.

When an assignment gives creditors a certain time for consideration and acceptance, the assignor cannot, before the expiration of such time, revoke the assignment.
Rules stated which govern the right to attach by trustee process.

CASE against the defendant as garnishee. Heard by the court.

These actions were brought against the defendant, Millett, as trustee for S. S. Humes & Co., upon his answers to interrogatories. Millett was assignee of S. S. Humes & Co., under the assignment annexed.

Joseph Smith & Co. sued S. S. Humes & Co., the writ being served by foreign attachment upon Millett, as trustee, July 18, 1874, at 4 P. M. Judgment for plaintiffs was rendered June 17, 1876, for debt and costs, $441.75.

W. Congdon & Sons sued S. S. Humes & Co., the writ being served by foreign attachment upon Millett, as trustee, July 18, 1874, at two minutes past 4 P. M. Judgment for plaintiffs, June 17, 1876, for debt and costs, $3,272.38.

Joseph Smith & Co. sued S. S. Humes & Co., the writ being served by foreign attachment upon Millett, as trustee, September 14, 1874, at 2.30 P. M. Judgment for plaintiffs, June 17, 1876, for debt and costs, $12,494.26.

Millett, in his answers as garnishee, set out the assignment, and admitted money in his hands, $10,025, and property valued at $13,000, subject to mortgages for $4,500. At the time of service of the first and second writs no creditors had executed releases. At time of service of the third writ, September 14, 1874, creditors whose claims amounted to $43,350.52, had executed and delivered releases. Burdett & Greene executed and delivered a release after the service of the third writ, and after the three months limited in the assignment had expired. Their debt was $7,927.07. It was claimed that the total liabilities of S. S. Humes & Co. amounted to $68,846.23, but this was not admitted.

"ASSIGNMENT. — S. S. HUMES & CO. TO THOMAS A. MILLETT.

"KNOW ALL MEN BY THESE PRESENTS : —

"That we, Syra S. Humes, James M. Humes, and Benjamin G. Perkins, all of Pawtucket, in the county of Providence and State of Rhode Island, copartners, and doing business in said Pawtucket, under the firm and style of S. S. Humes & Co.,

for and in consideration of ONE DOLLAR to us paid by Thomas A. Millett, of the city and county of Providence, in said State of Rhode Island, the receipt whereof is hereby acknowledged, and in further consideration of the trusts hereinafter named, do by these presents bargain, sell, assign, set over, transfer, and deliver unto the said Thomas A. Millett all our copartnership property, and assets of every kind and description, and wherever the same may be, and also all our individual property, not exempt by law, said assets and property being principally situated in said Pawtucket, and consisting of real estate, mill machinery, lumber, horses, wagons, buildings, and book accounts.

" To HAVE AND TO HOLD the same to him, the said Thomas A. Millett, his executors, administrators, and assigns, in SPECIAL TRUST, nevertheless, and for the following purposes : That the said Thomas A. Millett shall take immediate possession of said copartnership and private property and assets, and convert the same into money as soon as he conveniently can, either at private sale or public auction, and after reserving a reasonable compensation for his services and reimbursing himself for all expenses necessarily incurred, he shall pay the balance to all our copartnership creditors in proportion to their respective demands, first paying our private indebtedness, if any, out of the proceeds of our private or individual estates. PROVIDED, however, that such of our creditors as do not within three months from the date hereof execute and deliver to said assignee a full discharge of their claims and demands against us, the said assignors, shall not be entitled to or receive any dividend or profit under this Deed of Assignment, but the dividends on the claims and demands of such creditors shall be paid over to the aforesaid assignors, or to such person or persons as they appoint.

" In witness whereof we have hereunto set our hands and seals this second day of June, A. D. 1874.

                        " SYRA S. HUMES.     [Seal.]
                        " JAMES M. HUMES.    [Seal.]
                        " BENJ. G. PERKINS.    [Seal.]

" Executed in presence of
     " CHARLES SELDEN,
" Witness to S. S. and J. M. Humes.

     " And I, the said Thomas A. Millett, in consideration of the

above, do hereby accept said trust, and do covenant to and with the said S. S. Humes & Company that I will honestly and faithfully execute the same according to my best skill and knowledge. Witness my hand and seal this second day of June, A. D. 1874.

                     " THOMAS A. MILLETT.   [Seal.]

" In presence of

  " CHARLES SELDEN."

" STATE OF RHODE ISLAND, ETC. ⎱

      " PROVIDENCE, Sc.       ⎰    In Providence, this second day of June, A. D. 1874. Then personally appeared before me the aforenamed Syra S. Humes and James M. Humes, and Benjamin G. Perkins, and severally acknowledged the foregoing instrument by them signed to be their free and voluntary act and deed, both in their copartnership and individual capacity.

                     " CHARLES SELDEN,
                         " *Justice of the Peace.*"

*James Tillinghast & Pardon E. Tillinghast,* for plaintiffs.

1. The assignment not being for the benefit of creditors generally, but only for the benefit of those who within a fixed time should execute and deliver to the assignee a full discharge of their respective claims, no assent of the creditors can be presumed ; and, therefore, until the creditors accepted the assignment, by executing and delivering such discharges, it was simply a trust for the benefit of the assignors, and liable to attachment on trustee process. *Sadlier* v. *Fallon,* 4 R. I. 492 ; *Halsey* v. *Whitney,* 4 Mason, 206 ; *Drake* v. *Rogers,* 6 Mo. 317 ; *Hurd* v. *Silsbee,* 10 N. H. 108 ; *Skipwith* v. *Cunningham,* 8 Leigh (Va.), 271. See also *Hall* v. *Dennison,* 17 Vt. 310, and cases *infra.*

2. When the first and second attachments were made, July 18, 1874, no creditors had released, and the whole amount in the assignee's hands is therefore held by those attachments. *Sadlier* v. *Fallon,* 4 R. I. 492 ; *Widgery* v. *Haskell,* 5 Mass. 144 ; *Marston* v. *Coburn,* 17 Mass. 454 ; *Hastings* v. *Baldwin,* 17 Mass. 556 ; *Vial* v. *Bliss,* 9 Pick. 13 ; *Hooper* v. *Hills,* 9 Pick. 435 ; *Russell* v. *Woodward,* 10 Pick. 408 ; *Edwards* v. *Mitchell,* 1 Gray, 239 ; *Wiley* v. *Collins,* 11 Me. 193 ; *Carr* v. *Dole,* 17 Me. 358 ; *Leed* v. *Sayward,* 6 N. H. 83.

3. After the first and second attachments were made, certain

creditors, the amount of whose claims were sixty-three per cent. of S. S. Humes & Co.'s liabilities, executed releases. They are entitled to a *pro rata* dividend in the funds remaining in the assignee's hands after satisfying these first two attachments. The dividends of the creditors not releasing, being thirty-seven per cent. of the whole amount to be distributed, are held by the third attachment under the resulting trust for the benefit of the assignors. *Borden* v. *Sumner*, 4 Pick. 265, 267 ; *Ward* v. *Lamson*, 6 Pick. 358 ; *Bradford* v. *Tappan*, 11 Pick. 76 ; *Widgery* v. *Haskell*, 5 Mass. 144 ; *Dockray* v. *Dockray*, 2 R. I. 547, 557.

4. Burdett & Greene's release was not executed September 14, 1874, at date of third attachment, and that attachment takes priority of their claim. *Ward* v. *Lamson*, 6 Pick. 358 ; *Bradford* v. *Tappan*, 11 Pick. 76 ; *Leeds* v. *Sayward*, 6 N. H. 83 ; *Copeland* v. *Wells*, 8 Me. 411.

5. Burdett & Greene not having released within three months from June 2, 1874, *i. e.* on or before September 2, 1874, can take no dividend under the assignment in any event. *Brown* v. *Lyon*, 17 Ala. 653.

*Abraham Payne & Wingate Hayes*, for defendant.

*March* 10, 1877. POTTER, J. One of the questions raised in this case is whether when an assignment has been made for the benefit of creditors, on condition of their releasing within a specified time, and providing that the shares of those who do not so release shall be paid back to the assignor, the assignee can be garnished for the share of a creditor who does not accept the terms of the assignment before the service of the writ on the garnishee.

It is not necessary here to consider whether if the deed had provided that in case of non-acceptance the share of the non-accepting party should have been paid to those releasing, or to another subsequent class, or to creditors generally, the result in law would have been different.

It is also unnecessary to refer to the cases which have been cited from other states to show that such a reservation makes void the assignment, as our Supreme Court has decided in *Dockray* v. *Dockray*, 2 R. I. 547, which was a case between an attaching creditor and the assignee, that such a reservation is valid ; and it is believed the practice in this state has proceeded upon that idea of the law both before and since that decision.

· Is the assent of creditors necessary ?   The authorities gener- ally agree in holding that when the assignment is made to a trustee, the title to the estate passes to him, and the assent of creditors will be presumed when the assignment is made without condition, it being for their benefit : otherwise when the assign- ment is made directly to creditors when their assent is necessary. *Brooks* v. *Marbury*, 11 Wheat, 78, 97.

Many of the cases we have been referred to depend upon the peculiar jurisprudence of the states.   In Massachusetts the rem- edy by trustee process was greatly extended, in order to reach cases which in other states would have been subjects of equity jurisdiction; and their Supreme Judicial Court, in *Widgery et al.* v. *Haskell*, 5 Mass. 144, 154, gives as a reason for their course of decision the fact that they had no Court of Equity to enforce a trust ; and that at law, if the creditors were not parties to the deed, they were without remedy.   See notes by Rand on this case.   See also criticisms on this case by Story, J., in *Halsey et al.* v. *Whitney*, 4 Mason, 206, 215.

And the ordinary form used in these cases, as appears from the reports, was a tripartite agreement, to be executed not only by the assignor and assignee, but by the creditors also.

Decisions in some of the states have depended on the mean- ing attached to some particular word, *e. g.* credits, &c.   But our statute is broad and includes all personal estate.

If the assignment is made for the benefit of those who within a given time signify their assent, is the share which any creditor would take liable to be attached as the property of the assignor before this assent is given ?

There is great weight of authority for holding that in such a case the assent when given should be held to be retroactive. *Nicholl et al.* v. *Mumford*, 4 Johns. Ch. 522, 529, and cases cited ; *Hasley* v. *Whitney*, 4 Mason, 206, 215, and cases cited.

Where a release is required within a certain time as a condi- tion of receiving the benefit of the trust, there is not the same reason for presuming acceptance ; but even then the question may arise whether the acceptance of the condition may not have a retroactive effect as before stated.

It seems to be settled that in case of garnishment the attach- ing creditor can acquire no greater rights in the property than

the assignor himself has. Drake on Attachment, §§ 458, 660 ;
*Harris* v. *Phœnix Insurance Co.* 35 Conn. 310, 313.

What then are the rights of the assignor in this respect ? He
has conveyed his estate to a trustee and agreed to give the cred-
itors a certain time to consider and decide on acceptance. Could
he before the expiration of that time revoke it ?

We think not.[1] In some cases in England and in this country
it has been held that the assignor had power to revoke. But we
think that reason and the weight of authority are against this
view, unless the revocation was merely for the purpose of better
carrying out the trust, or unless it was done with the assent of
creditors. In cases of such assignments there is a valuable con-
sideration in the past and a strong moral obligation in the future.
And until the time has elapsed the assignee cannot be considered
as a trustee for the assignor.

If the time allowed is unreasonable, that might raise a question
of fraudulent intent. And in cases of distant creditors, courts of
equity have extended the time.

But if a creditor suffers the time to elapse, so that under the
terms of the trust his share results to the assignor, can such share
be attached in the hands of the assignee by our trustee process ?

In 2 Perry on Trusts, § 602, it is laid down, and apparently
as a general rule, that non-assenting creditors can reach the sur-
plus in the assignees' hands by foreign attachment, garnishment,
or trustee process. For this are cited *Hastings* v. *Baldwin*,
17 Mass. 552; *Todd* v. *Bucknam*, 11 Me. 41; which last case
generally follows the Massachusetts decision, and only one other
case in point, *Hearn* v. *Crutcher et al.* 4 Yerg. 461, the latter
recognizing the validity of trustee process after the property
has been sold and converted. The other cases cited all refer to
bills in equity. *Vernon et al.* v. *Morton et als.* 8 Dana, 247,
was a bill in equity; and *Brashear* v. *West et als.* 7 Pet. 608,
cited in the last case, was also in equity. *Dubose* v. *Dubose*, 7
Ala. 235, holds that the court will on a bill in equity compel a
sale, *Wright* v. *Henderson*, 8 Miss. 539, holding the remedy to
be in equity. By the decisions in most of the states the right

---

[1] NOTE BY THE REPORTER. — And see *Stone et al.* v. *King et als.* 7 R. I.
358, 365.

to attach by trustee process is subject to the following general rules : That the plaintiff can have no greater rights against the garnishee than the defendant has; that he can be in no better condition as to the garnishee than the defendant would be if suing. Drake on Attachment, §§ 458, 460; *Harris* v. *Phœnix Insurance Co.* 35 Conn. 310, 313. See also *Haven* v. *Wentworth, Trustee*, 2 N. H. 93 ; that the debt must be such as could be enforced in an action at law; that the process is limited to legal debts ; that it must be such a debt due now or at a future time as the defendant could himself prosecute at law; and that a mere equitable claim cannot be attached. Freeman on Executions, § 162, citing *Godden* v. *Pierson*, 42 Ala. 370; *May* v. *Baker*, 15 Ill. 89. And see the opinion by the late Judge Collamer in *Hoyt* v. *Swift et al.* 13 Vt. 129, 133 ; Drake on Attachment, § 557.

It is also laid down that the property trusteed must be, with some few exceptions, as for example hides while tanning, Drake on Attachment, § 464, such as could after judgment against the defendant be turned over by the garnishee to be taken in execution ; or, if a debt, must be such as that the garnishee could after judgment against the defendant protect himself by paying it without waiting to be sued ; 6 Dane, Abridgment, 505 ; Drake on Attachment, § 463 ; *Maine Fire & Marine Insurance Co.* v. *Weeks et als.* 7 Mass. 438; and as to the burden of proof, the garnishee stands in the same situation as if the defendant had sued him. *Potter et al.* v. *Stevens et als.* 9 Cush. 530, criticising opinion of Parsons, C. J., in *Webster* v. *Gage et als.* 2 Mass. 503. See Drake on Attachment, § 461.

And it is well settled that, fraud excepted, the assignor's resulting interest could not be attached and sold on the ordinary execution. *Wilkes et al.* v. *Ferris*, 5 Johns. Rep. 335; *Badlam* v. *Tucker et al.* 1 Pick. 389, 399; *Kendall & Co.* v. *Gibbs & Co.* 5 R. I. 525.

As soon as the property is converted into money, and it is ascertained that there is a surplus resulting to the assignor, he might maintain a bill in equity to compel a settlement and payment of the surplus, or might at a proper time maintain an action at law for money had and received. In the present case, so far as appears, the property at the date of the two first attach-

ments, and possibly of the last, was in goods and evidences of debt.

When the affidavits were made by the garnishee in December, 1874, the assignee had collected $10,025 from the accounts, but he does not state at what time these collections were made. The remainder were of little or no value. The goods, valued at $13,000, but subject to a mortgage of $4,500, appear to have been still on hand. Creditors claiming $43,350 had released. Burdett & Greene, claiming $7,927, had, before the three months expired, executed a release and deposited it with Mr. Ripley (not the attorney of the assignee), and had informed the assignee that they had done so, but the assignee had not received it. We cannot in this suit decide on the validity or effect of this release. But before any court could decide whether any money and how much could result to the assignor, they would have to decide on the effect of this release, and must also ascertain how many other creditors had not released and what amounts were due them.

There was nothing in the assignee's hands at the time of these attachments which he could turn over to be seized on execution. All the goods he held were subject to the trust. He had no money which he had any right to pay out after judgment, and so discharge himself, as he held that also on trust. The creditors not releasing might maintain a bill to compel the assignor and assignee to apply any surplus to their debts; but the assignor could have maintained no bill in equity, for so far as appears there had, up to that time, been no misconduct or unnecessary delay; and he could not have maintained any action at law.

*Judgment for defendant for his costs.*

Note by the Reporter. — The foregoing decision overrules the *dicta* of Ames, C. J., in *Sadlier & Co.* v. *Fallon*, 4 R. I. 490, 492.

After the foregoing opinion had been given, the plaintiffs filed a bill in equity against Millet and his assignors to establish a lien on the equitable assets in his hands. The court granted the relief prayed for. See *Smith* v. *Millett*, to be published in 12 R. I.