(Decided June 1st, 1860.)

# VAN HOLLEN KALKMAN, garnishee of WM. W. NEWMAN, *vs.* MARGARET P. McELDERRY.

An assignment, or power of attorney, authorized the assignee or attorney to collect the debts due the assignor, and after deducting commissions and charges, to "make as just and satisfactory a dividend thereof to my creditors *as he can* and settlement with them." HELD:

That this was not a bar to an attachment by a creditor, because it does not devote, *absolutely* and *under all circumstances*, the property to the payment of his debts, and, there being no evidence of any assent, in fact, of the creditors to it, the law does not presume any.

An assignment not transferring, on its face, all the property of the grantor, and not exacting releases, must, in order to bar the attachment of a creditor, be accepted by the transferree and adopted by the creditors.

The presumption of assent, by creditors, depends on the character of the instrument of transfer; an assignment will not be considered as beneficial to creditors, unless it devotes the property absolutely and under all circumstances, to the payment of the debts secured.

The assent of creditors will be presumed where the trust is for the benefit of all, and no release or other condition is stipulated for on behalf of the debtor, and the property is to be distributed equally among all the creditors *pro rata*, because such a trust cannot be for their injury and must be for their benefit.

Where a party receives funds from A, who directs their appropriation to B, in payment of a debt due him, and A agrees to the appropriation, such party will, at the election of B, be regarded as his trustee; such a trust may be enforced in equity, or when the amount is liquidated, the fund may be recovered from the depository at law.

APPEAL from the Court of Common Pleas.

*Attachment* on judgment, issued on the 15th of July 1858, by the appellee against Newman, and laid, on the 16th of July 1858, in the hands of Kalkman as garnishee, who appeared and pleaded *nulla bona.*

*Exception.* It was admitted that the appellee, on the 5th of March 1858, recovered a judgment against Newman for $408.75, and that the garnishee had in his hands $197.47, to distribute among the creditors of Newman, according to the terms and conditions of the assignment or power of attorney from said Newman, which is set out in the opinion of this court; that the garnishee received this money on or about the 8th of July 1858, and on the next day advertised in the Baltimore Sun newspaper, for such creditors to file their claims, as follows:

"*Notice.*—The creditors of William W. Newman, are hereby notified to file their claims, properly authenticated, with the subscriber, on or before the 15th of September 1858, preparatory to a dividend of such funds of said Newman as may then be in the subscriber's hands, by virtue of a power of attorney, executed to him by said Newman." (Signed,)

"V. H. KALKMAN,

Office No. 13 Lexington Street."

That some of the creditors responded to said notice before this attachment was laid; that the garnishee has made no dividend among the creditors, and made no settlement with them prior to this attachment, and that he has suspended all attempt to do so in consequence of this attachment; that Newman, shortly after making said assignment, left the State of Maryland, and at the time of making it was insolvent in fact; that at the time said power of attorney was executed, he, the said Kalkman, asked Newman to furnish him with a list of all his creditors, which he did, and the paper annexed to said power of attorney is the list which was then given and was then annexed to the said power of attorney.

The court (MARSHALL, J.,) granted the plaintiff's prayer which is set out in the opinion of this court, and rejected a prayer of the defendant, "that upon the evidence in this case

the plaintiff is not entitled to recover. To this ruling the defendant excepted, and from the judgment of condemnation upon the verdict, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*John H. Ing*, for the appellant, argued:

1st. The fact is undisputed, that when this attachment was laid, the garnishee had declared himself the trustee of the fund sought to be condemned under the attachment process. In such a case, the fund becomes the property of the *cestui que trusts* without more, and the court will administer it. After the receipt of the fund by Kalkman, and the notice by him to creditors, to file their claims with him, the money became a trust fund of which he was trustee, and the creditors *cestui que trusts*, and Newman had *no control over or interest in it*, and it was such a trust as a court of equity will administer, and the attachment, therefore, will not lie. For these positions see 18 *Ves.*, 149, *Ex-parte Pye*. *Burrill on Assignments*, 281, 285, 300, 301. *Story's Eq.*, secs. 371, 1037, 1041, 1045, 1056, 1047. *Hill on Trustees*, 127, 128, 129. 1 *Lead. Cases in Equity*, 215. 1 *Amer. Lead. Cases*, 46, 47. 11 *Md. Rep.*, 185, *Inloes, Garn. of Turnbull & Co., vs. American Exchange Bank*. 5 *Gill*, 420, *Somerville vs. Brown*. A letter of attorney may be revocable at common law, yet if it concerns payment of debts it shall be continued in equity. *Viner's Abr., Title, Countermand, A*, 14. So if the principal assigns all his effects for the benefit of his creditors, and gives the assignee a power of attorney to collect and receive all debts and outstanding claims, the power is irrevocable. *Story on Agency, sec.* 477. 2 *Saund. Pl. & Ev.*, 597. 2 *Esp.*, 565, *Walsh vs. Whitcomb*.

2nd. The transfer from Newman was a valid transfer, and passed to Kalkman the legal estate, so as to prevent this judgment creditor from appropriating the whole fund to her own use by attachment, to the prejudice of the other creditors. The true test in cases of assignment is: "That where the owner of the property has lost all power over it and cannot

change its destination the creditors cannot attach." 19 *Martin*, 137, *Babcock vs. Maltbie*, cited by the Supreme Court in *Black vs. Zacharie*, 3 *How.*, 512, the latter case being referred to in *Wilson vs. Carson & Co.*, 12 *Md. Rep.*, 78. A conveyance made for the benefit of all creditors is not treated as *mala fide* but merely as doing what the law admits to be rightful. It is not necessarily fraudulent because it may operate to the prejudice of a particular creditor. *Story's Eq.*, sec. 370. 5 *Term Rep.*, 235, *Holbird vs. Anderson*. 3 *Maule & Selw.*, 371, *Pickstock vs. Lyster*. In a general assignment for benefit of creditors, if there be no stipulation for release, *the assent of creditors will be presumed.* Such a general assignment *bona fide* made by the debtor and assented to by the assignee, will be deemed a valid conveyance founded upon a valuable consideration, and good against creditors proceeding adversely to it by attachment, or seizure in execution of the property conveyed thereby; at least, *unless all the creditors*, for whose benefit the assignment is made, *repudiate it*. *Story's Eq. sec.*, 1036. Where the assignment is to a trustee for the benefit of creditors, not parties to the deed, it may be laid down as a general rule in American law that the assent of creditors is not necessary to its validity, and the legal estate or title will pass to the assignee without such assent, so as to prevent a judgment creditor from acquiring a lien, if real, by his judgment, or if personal, by his execution, *unless upon the ground of fraud*. *Burrill on Assignments*, 308. A deed conveying property to a trustee to be sold, and its proceeds applied to the payment of certain debts, and not imposing on the creditors any conditions, is valid to pass the property to the trustee. 11 *Wheat.*, 78, *Brooks vs. Marbury*. A *bona fide* assignment of property by an inssolvent individual, to a trustee, for the benefit of his fair creditors is a valid sale and transfer of the property for a valuable consideration. 6 *G. & J.*, 220, *State vs. Bank of Maryland.* It cannot be denied, that it is legal for a debtor in Maryland, in failing circumstances, to convey all his property to a trustee for the general benefit of creditors. 6 *G. & J.*, 205, 217. If one creditor may be preferred to another, it would be dif-

ficult to imagine an objection to the validity of a transfer by a debtor of his whole estate to trustees, for the equal benefit of all his creditors. ·Equality is equity, and when a debtor makes a transfer of his property for the fair purpose of equal distribution among his creditors, *he does an honest act, and discharges a moral duty,* which none can reasonably complain of, and to which objection can seldom be made, except by such as may seek to secure their own claims, at the expense of the other creditors. In such case it would not be the debtor seeking to evade or defeat the rights of the creditors, whose interest, according to the extent and character of their respective claims, he proposed to protect, but the particular opposing creditor, seeking to draw to himself more than his just proportion of the debtor's effects, to the prejudice of the other creditors; so that if there be anything unfair, it would seem to be chargeable, not to the debtor, in attempting to secure an equal and just distribution among his creditors, but rather to the creditor attempting to secure his own claim to the exclusion of the other creditors. It is only with the view of securing his own debt, or advancing his interest beyond that of the other creditors, and not to procure a just and equal distribution of the debtor's property, that a creditor will seek to set aside such a deed, since the deed, if suffered to stand unimpeached, secures that object. 6 *G. & J.,* 217. It has been more than once decided in Maryland, say the court in 7 *Md. Rep.,* 388, *American Exchange Bank vs. Inloes,* that a debtor, by the common law, and apart from our insolvent system, may, by assignment *of his property* or by payment, secure one creditor to the exclusion of others. In *Pickstock vs. Lyster,* 3 *Maule. & Selw.,* 371, it was decided, that if a man assigns all his property to a trustee, simply with the purpose of having *it fairly distributed amongst all his creditors,* such an assignment, although it may have the effect of hindering and delaying a particular creditor of his execution, *is not within the spirit of the Statute of* 13th *Eliz.* ch. 5, *and, therefore, is not void,* because it does not deprive any of the creditors of his fair share of the debtor's property, if he chooses to become a party to the deed.

*Geo. M. Gill* for the appellee:

The power of attorney to Kalkman was revocable at any time before distribution, by Newman. It cannot by denied that this paper was a power of attorney and not an assignment or grant. It authorizes the attorney to receive of all persons, all debts and sums of money outstanding, or that thereafter should be due and owing to Newman, who was about to leave the State, but denied to Kalkman the power to constitute any attorney under him without the written consent of Newman. It also requires Kalkman to account to Newman for all moneys received. It also authorizes Kalkman to deduct his commissions and professional services and to make as just and satisfactory a dividend and settlement among the creditors of Newman as he can. The paper is in all respects a mere power of attorney, which was revocable at the pleasure of Newman. After its execution and before the receipt of any money under it, undoubtedly Newman might have revoked it, and so after the receipt of money and before distribution and settlement, Newman can revoke it. Again, let us suppose that Kalkman had received a part only of the money or debts due Newman, and had distributed such part and Newman had revoked his power as to such part as had not been collected, such revocation would undoubtedly have been good and prevented the further action of the attorney. This shows that there was no appropriation of all debts due to Newman. It appears that Kalkman received under the power of attorney, which is dated 1st of February 1858, the amount for which the verdict below was given, but when this amount became due to Newman, whether before or after the 1st of February 1858, does not appear. The amount was collected on the 8th of July 1858, by Kalkman. The power of attorney was to collect all outstanding debts, and all debts that should thereafter become due and owing to Newman. An assignment to pass all debts accruing thereafter is an anomaly, and certainly could have no effect. A power of attorney might apply as well to debts contracted at its date, as to debts thereafter contracted. This would seem to show conclusively that this paper is a mere power of at-

torney and not an assignment or transfer, and therefore that it was revocable at any time by Newman until actually executed, and while it was, in any respect, executory.

The only question here is, whether the creditors of Newman had any vested interest? If they had, which of them had, and to what extent? Such never could have been the intent of this instrument. Newman being insolvent, and about to leave the State, leaves a power of attorney, so that the debts then due, or thereafter to accrue to him in Baltimore, should be collected, and that his attorney might make the best settlement he could with his creditors. If the object had been to make an equal division among his creditors, the paper would have been differently worded. It did not look to this, but left to the attorney to make as just and satisfactory a dividend or division among his creditors as he, the attorney, could, and as just and satisfactory a settlement with his creditors as he could. Some creditors are more easy of settlement than others, some might take a small amount in full discharge, others would require more. If Kalkman had been a trustee, the power given to him to make as just and satisfactory a settlement and dividend as he could, would have been too broad a power under the decisions of this court. Who is to determine what is a just and satisfactory dividend and settlement? The answer must be, the attorney or trustee—a power of this kind is liable to abuse, and its insertion in a deed of trust would avoid it. Is property to be tied up in this way by an insolvent debtor? If he can do this he can set his creditors at defiance. The law will not permit this. This is but an ingenious device, in this view, to place his means beyond the reach of his creditors, and for this reason, if for no other, this paper, if considered as an assignment, would be void. The true view, however, is, that this paper was a naked power of attorney, and therefore revocable. The attachment when laid operated to revoke it.

It is true that it was competent to Newman to strip himself of all power and control over his debts, and to pass them away to a third party, and to direct that third party to divide their proceeds equally among his creditors; nay, he might

Kalkman, garn. of Newman vs. McElderry.

have preferred certain named creditors and directed them to be first paid. In this case, however, he has not so directed, but he leaves to his attorney the discretion as to the kind of settlement and apportionment among his creditors he may please to make, and the use of the terms, "just and satisfactory as he can make," does not compel, necessarily, an equal division among his creditors. If Kalkman had pleased to make a settlement with any creditor, he might have paid him all he received, provided such amount did not exceed his claim, and would have bound Newman. No creditor had, or could claim, any vested right or claim of appropriation under this power of attorney.

Another view may be taken of this transaction. The power of attorney is known to the parties to it and to no one else, until the attorney gives the notice. After he gives notice certain claims are filed with him, but nothing further done. If, in this state of things and before any settlement or distribution, Newman had determined to revoke the power of attorney, he undoubtedly could have said to Kalkman, you are my attorney and I now stop you. If this be so, then this case must be decided in favor of the plaintiff in the attachment case. Kalkman gives notice which shows, if you please, that he designed to make a dividend equally among the creditors. Before he does this, and while the matter is still unexecuted, the attachment comes and stops the division and settlement. The notice relied upon in this case, and from which, with the filing of claims, an attempt is made to work out an appropriation, is to creditors to file with Kalkman their claims properly authenticated before the 15th of September 1858, preparatory to a dividend of such funds of said Newman *as may then (on the 15th of September 1858) be in the hands of Kalkman.* If no funds were in the hands of Kalkman on the 15th of September, of course there could be no dividend. No creditor had notice what Kalkman had received. Some of the creditors filed claims against Newman with Kalkman. Now take the notice and the filing of claims, can it be said that they together amounted to an appropriation? Suppose at the time of giving notice and filing claims

Kalkman had not received any thing, would it be contended that by filing claims with Kalkman the power of attorney would have become irrevocable?

The case of *Tiernan vs. Jackson*, 5 *Pet.*, 580, states the true rule, which is this, "until the parties receiving the conveyance or assignment had done some act recognizing the appropriation of it to the particular purposes specified, and the person claiming had signified their acceptance of it, so as to create a privity between them, the property and proceeds remained at the risk, and on the account of the remitter or owner." If we apply the test of this principle, and suppose that Kalkman proved to be insolvent, and nothing was got from him by any creditor, could any creditor be estopped by anything done from claiming his debt from Newman? Undoubtedly not. This case in 5 *Pet.*, sustains the views of 14 *East.*, 582, *Williams vs. Everett;* and of 3 *Price*, 58, *Grant vs. Austen;* and of 4 *Price*, 258, *King vs. Hunter*. The case of *Gerrard vs. Lord Lauderdale*, 3 *Simon*, 1, goes much further than this case, and shows that notification to the creditor produces no effect where there was an assignment in direct terms. See, also, *Wallwyn vs. Coutts*, 3 *Merivale*, 707. The notice of Kalkman refers to a power of attorney, but gives no date and no information, as to what creditors, as to period, are to file claims with him. It gives no notice as to what he has received, and it manifestly is designed to divide only what may be in his hands on the 15th of September 1858. There is nothing in this to prevent his principal from claiming the money in his hands until the 15th of September had arrived, and indeed until he had made a division and settlement. Until the 15th of September 1858, Newman might have revoked his power of attorney; a creditor, by filing his claims with the attorney; did no more than place himself in a condition to ascertain what Kalkman might design to do, and if he found it to his interest to take his offer, to do so. He does not signify his acceptance to any appropriation, but merely takes the chances of getting something from Kalkman, and there is nothing to show what creditors filed their claims with Kalkman, nor the amount of any of them. The

whole case shows that Kalkman was the agent of Newman, and acting exclusively for his benefit.   He was in no sense a trustee for the benefit of creditors.   He was to receive the debts due to Newman and make the most satisfactory settlement and division for Newman he could, with the creditors, and the agent might have paid the creditors in such proportions as he pleased; until actual payment and settlement, this power of attorney was revocable.

This court has discouraged transfers which gave unlimited powers to trustees, and this discouragement should be continued, so as to prevent frauds and collusions.   If this paper had been designed to transfer all the debts due to Newman, for the equal benefit of all his creditors, it would have been differently expressed—no terms of assignment are used, and it was never intended to operate as an assignment or work out an appropriation.

Le Grand, C. J., delivered the opinion of this court:

The facts in the case are but few.   The appellee had obtained a judgment against Newman, on the 5th of March 1858.   The attachment was laid in the hands of the garnishee July 16th of the same year.   There was no dispute as to the correctness of the claim; it was admitted, as was, also, a certain sum of money which had been collected by the garnishee from the debtors of the defendant, Newman, in pursuance of the authority conferred by the following instrument:

"Know all men by these presents, that I, William W. Newman, have constituted and appointed, and hereby constitute and appoint V. H. Kalkman, of said city, my sufficient and lawful attorney, in my name, and for my use and benefit, to ask, demand and receive of all and every person or persons, whomsoever, all such debt and debts, sum and sums of money as are now outstanding, or shall be due and owing to me, the said William W. Newman, and upon receipt thereof, in my name, as aforesaid, to execute and deliver proper acquittances for the same; and it shall and may be lawful for the said V. H. Kalkman, to compound or agree to

9    v. 16

accept any dividend for any debt or debts, sum or sums of money, now due or hereafter to become due to me, as he may see fit, at his discretion and to the best of my advantage and interest, but he shall not constitute or substitute any attorney, or attorneys, under him, without my license, in writing, for that purpose first had and obtained.

"And the said V. H. Kalkman shall duly account to me, the said William W., upon receipt by him, said Kalkman, of any moneys on my account by virtue hereof, he, the said Kalkman, shall, after deduction of his commissions for collection and charges for professional services, *make as just and satisfactory a dividend thereof to my creditors as he can, and settlement with them.*

"And I, the said William W. Newman, hereby covenant to ratify and confirm whatever acts or things the said V. H. Kalkman may lawfully do by virtue hereof in the premises.

"Witness my hand and seal this 1st day of February, A.D. 1858                    WILLIAM W. NEWMAN, (Seal.)"

It was properly witnessed and acknowledged before a justice of the peace.

On the 9th of February 1858, through the "Baltimore Sun" newspaper, the garnishee, Kalkman, gave notice to the creditors of William W. Newman to file their claims properly authenticated with him, on or before the 15th day of September 1858, preparatory to a dividend of such funds of said Newman as might then be in his hands by virtue of a power of attorney executed to him by Newman.

Some of the creditors filed their claims, but were not paid anything because of the pendency of this action. On this state of case, the court instructed the jury as follows: "That if they find that when W. W. Newman, executed the power of attorney, given in evidence in this case, he was insolvent in fact, and shortly after making the same, he left the State of Maryland, and further find that when the attachment was laid in the hands of V. H. Kalkman, he had received for the collection made by him under the said power of attorney, the amounts given in evidence and stated in his answer, and had,

when the said attachment was so laid, made no settlement with any of the creditors of Newman, and had made no dividend among the said creditors, then the said plaintiff is entitled to recover, even if the jury find that prior to the laying of said attachment, he had advertised, as shown in his answer, and some of the creditors had filed their claims with him." The court rejected the prayer offered on behalf of the defendant, "that, upon the evidence in the case, the plaintiff was not entitled to recover."

The question before this court is, whether or not the Common Pleas ruled correctly. On the part of the plaintiff it is contended, that the instrument under which Kalkman acted was but a simple power of attorney, revocable at the pleasure of Newman; and, on the other side, that it was a valid and effective assignment, conveying, for the benefit of creditors, the legal title to the funds; that the filing of the claims of some of the creditors before the attachment, and the acceptance by Kalkman of the power conferred, made him a trustee for the benefit of the creditors of Newman, creating such a trust as would defeat the attachment of the plaintiff.

If the paper relied upon as an assignment be one, it is so, because of the authority given to Kalkman to divide his collections of the debts due to Newman among the creditors of the latter.

There is no doubt that a debtor in failing circumstances may *bona fide* prefer one creditor to others. 6 *Gill & John.,* 205. Nor, as was said in the case of *The State vs. The Bank of Maryland,* 6 *Gill & Johnson,* 217, that, "equality is equity, and when a debtor makes a transfer of his property for the fair purpose of equal distribution among his creditors, he does an honest act, and discharges a moral duty." And it is equally true, where a party receives funds from A, who directs their appropriation to B, in payment of a debt due him, and A agrees to the appropriation, he will, at the election of B, be regarded as his trustee. The trust may be enforced in equity, or, where the amount is liquidated, the fund may be recovered from the depository at law.

The instrument relied upon in the present case, does not,

on its face, transfer all the property of the debtor, nor does it exact releases. To make it an effectual bar to the plaintiff's right of recovery, three things must concur: 1st, the transfer, 2nd, the acceptance of the transferree, and 3rd, the adoption of the creditor. Were it conceded that the paper is sufficient in form to constitute a good assignment, and that the published notice of Kalkman to creditors is evidence of his acceptance, still, there is wanting the third ingredient to make it available. There is no specific appropriation of any sum to any one; the whole matter is left to the judgment of Kalkman; he is to "make as just and satisfactory a dividend thereof to my (his) creditors *as he can,* and settlement with them." The case of *King vs. Hunter & others,* 4 *Price,* 258, (2 *Exchequer,* 95,) shows that such an appropriation is insufficient. Besides, there is no evidence that any of the creditors ever, in point of fact, assented to the transfer. The notice of Kalkman gave no accurate information of the character of the paper executed by Newman. And, although it is well established by numerous decisions, that, in case of an assignment to a trustee for the benefit of creditors, "where the trust is for the benefit of all, and no release or other condition is stipulated for on behalf of the debtor, but the property is to be distributed equally among all the creditors *pro rata,* the assent of the creditors must be presumed; for the trust cannot be for his injury, and must be for his benefit," 4 *Mason,* 206, it has also been held that, this presumption of assent depends upon the character of the instrument of transfer. In *Townsend vs. Harwell,* 18 *Alabama,* 303, after recognizing the doctrine laid down by Judge Story in 4 *Mason,* the court say, "such assignment will not be considered as beneficial *unless* the deed devotes the property *absolutely,* and *and under all circumstances,* to the payment of the debts secured." And in *Evans vs. Lamar,* 21 *Alabama,* 333, it was said, that "a deed which postpones a creditor in the collection of his debt, beyond the date of its maturity, is not valid as a conveyance of the property mentioned in it, until it is assented to by the creditor. Until that time it is a mere power, and may be revoked by the levy of an execution by

creditors on the property intended to be conveyed by it. Neither will the assent of the creditors to such a deed be presumed."

Being of opinion that the paper of Newman does not devote, *absolutely* and *under all circumstances*, the property to the payment of his debts, and there being no evidence of any assent, in fact, of the creditors to it, the law does not presume any. We are of the opinion the court gave a proper direction to the jury, and accordingly affirm its judgment.

*Judgment affirmed.*

(Decided June 1st, 1860.)